**Wanda Gail Pingleton McCALLISTER,**
**Petitioner–Respondent,**

v.

**Stanley Curby McCALLISTER,**
**Respondent–Appellant.**

No. 17067.

Missouri Court of Appeals,
Southern District,
Division Two.

May 14, 1991.

G.H. Terando, Wilhoit, Edmundson, Terando & Welch, Poplar Bluff, for respondent-appellant.

James E. Spain, Keith D. Sorrell, Spain, Merrell and Miller, Poplar Bluff, for petitioner-respondent.

SHRUM, Judge.

In this domestic relations case, we must decide two questions: (1) whether the trial court erred in entering a decree of legal separation rather than dissolution when the wife failed to deny, by verified pleading or sworn testimony, the husband's allegation that the marriage was irretrievably broken and (2) whether the trial court erred in awarding maintenance of unlimited duration to the wife.

Because the wife did not deny under oath that the marriage was irretrievably broken, we have determined that § 452.320.1, RSMo 1986, is applicable and we remand for entry of an order of dissolution. We conclude the evidence and the law support the maintenance award and we affirm that portion of the judgment.

## FACTS

The wife initiated this action with her verified petition for legal separation. Despite the requirement of § 452.310.2, the wife did not allege the marriage was irretrievably broken. In his verified responsive pleadings, the husband alleged the marriage was irretrievably broken, and he requested a dissolution. In an unverified response to the husband's pleadings, the wife denied the marriage was irretrievably broken.

At trial, the wife presented no evidence that the marriage was not irretrievably broken; neither attorney directly asked her about the irretrievable breakdown of the marriage.[1] The husband testified that the marriage was irretrievably broken, and there was ample evidence to support the husband's assertion.

The trial transcript and the wife's medical records provide the following facts relevant to the issues on appeal. The McCallisters were married on October 16, 1983, and separated December 3, 1988. The husband is retired from the United States Army and receives a monthly pension of $773. He operates a combined grocery, gasoline, laundry, and rental business which provides him a gross income of $2,309. (The trial court awarded the business, subject to indebtedness, to the husband.)

At the time of trial the wife was employed as a part-time bookkeeper at a real estate firm and was attending a real estate school. She testified her take-home pay was $135.84 per week and she "sometimes" received $25 per week child support for a son born of a former marriage.[2] The

---

1. The parties were represented at trial by different attorneys from those who represent them on appeal.

2. In its findings of fact, the trial court indicated the wife's monthly income was $479.93.

wife's income and expense statement listed her expenses at $1,051 per month.

The record contains much evidence about the wife's medical condition. In November, 1987, suffering from liver cancer, she underwent surgery at the medical center at Lackland Air Force Base, Texas. In a letter, the chief surgeon of the oncology unit at the Lackland medical facility described the surgery as successful but said that without "vigorous intervention" in the form of "additional radiotherapy treatments and possibly chemotherapy" the wife might not survive more than four months. He described the wife's prognosis at the time of surgery as "not bright" and said "the chances for a cure are very small."

The record reveals that "vigorous intervention" did prolong the wife's life. She returned to work in February 1988, but by April 1988 a pre-existing ulcer condition flared up and required treatment. The ulcer condition necessitated hospitalization in August 1988 and hospitalization and surgical treatment in November 1988.

The wife testified that because of the cancer she must undergo extensive testing every three months, each session requiring approximately two weeks hospitalization. One of the quarterly testing sessions occurred the week before trial and the wife had been told she was "in very good shape" and that no evidence of cancer had been found. Nevertheless, because of radiation and surgery, the wife still had numerous medical problems including hypoglycemia, potential "scarring down" of the liver causing bile duct blockage and severe sickness, necessity of sleeping in three- to four-hour increments because the radiation to her spine prevented staying in bed for an uninterrupted eight hours, the inability to do physical labor, and dietary restrictions.

Regarding her future, the wife testified her goal was to finish real estate school so that she could be independent and enjoy prolonged survival. She described herself as capable of holding a job and earning income. Her choice of real estate sales was motivated, in part, by her belief that

such a job would enable her to work as her medical situation dictated.

The parties appeared to have a good marriage until the wife was diagnosed as having cancer. There was evidence that, following the wife's illness, the husband had been amorously involved with another woman, and he admitted that she moved in with him after the separation. There was substantial conflict between the parties in the months before separation, including at least one incident of physical violence directed toward the wife by the husband, threats by the husband to kill the wife and her son, and evidence that the husband removed the wife's name from bank accounts.

The trial court entered a decree of legal separation and awarded the wife maintenance of $550 per month. The court stated its maintenance award had no termination date but was subject to modification as provided by § 452.335.3. There is no challenge to the court's division of marital property or the order that the husband pay the wife's attorney fees.

## ANALYSIS AND DECISION

### Dissolution or Legal Separation

■ The husband contends the trial court erred in granting a decree of legal separation rather than dissolution because the wife did not, by verified pleading or sworn testimony, deny that the marriage was irretrievably broken. On this issue, the trial court concluded,

The [husband's] argument that a dissolution should be granted is based upon the failure of the [wife] to file a verified denial of the [husband's allegation that] the marriage was irretrievably broken and the fact that [the wife] made no efforts at trial to deny the allegation once [the husband] testified that the marriage was irretrievably broken and could not be preserved. [The husband] cites § 452.020 [3] to support this position. The court in reviewing the facts with the applicable statutes and case law, i.e., *Co-*

3. Presumably § 452.320.

*labianchi v. Colabianchi,* 646 S.W.2d 61 (Mo.1983) finds no merit in [the husband's] position. Section 452.320.1 does not apply to this proceeding. Pursuant to § 452.305.2, a decree of legal separation is granted....

Resolution of the husband's first point requires our consideration of the following statutory provisions:

Section 452.305.1: The circuit court shall enter a decree of dissolution of marriage if ... (2) The court finds that there remains no reasonable likelihood that the marriage can be preserved and therefore the marriage is irretrievably broken....

Section 452.305.2: If a party requests a decree of legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form.

Section 452.320.1: If both of the parties by petition or otherwise have stated under oath that the marriage is irretrievably broken, or one of the parties has so stated and the other has not denied it, the court, after considering the aforesaid petition or statement, and after a hearing thereon shall make a finding whether or not the marriage is irretrievably broken and shall enter an order of dissolution or dismissal accordingly.

Section 452.320.2: If one of the parties has denied under oath ... that the marriage is irretrievably broken, the court shall consider all relevant factors ... and after hearing the evidence shall (1) Make a finding whether or not the marriage is irretrievably broken....

We note the potential conflict between §§ 452.305.2 and 452.320.1. Where facts exist that would make § 452.320.1 applicable but one of the parties has requested a legal separation under § 452.305.2, the trial court, upon a finding of irretrievable breakdown, is faced with conflicting statutory directives: § 452.320.1 directs an order of dissolution and § 452.305.2 directs a decree of legal separation. Our supreme court has held that when the two provisions are in conflict, § 452.320.1 (amended in 1977) prevails over § 452.305.2 (enacted in 1973). *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 63 (Mo.banc 1983). *See also O'Neal v. O'Neal,* 673 S.W.2d 126, 127 (Mo.App.1984).

At issue is the applicability to our facts of § 452.320.1. If § 452.320.1 applies and the trial court finds the marriage is irretrievably broken, *Colabianchi* requires dissolution rather than the legal separation the wife requested pursuant to § 452.305.2. The wife candidly admits that if her answer should have been verified, then the trial court, pursuant to § 452.320.1 and § 452.305.1, should have entered a decree of dissolution. The wife argues, however, that her denial of the husband's allegation of irretrievable breakdown did not need to be verified, and, therefore, her unverified denial renders § 452.320.1 inapplicable. If § 452.320.1 does not apply, her argument continues, the trial court properly ordered legal separation under § 452.305.2.[4] For the reasons that follow, we conclude § 452.320.1 contemplates a verified denial and, therefore, the section applies to the facts before us.

■ Citing *In re Marriage of Dunn,* 650 S.W.2d 638 (Mo.App.1983), the wife argues that the *only* purpose of verification is to provide jurisdiction to the trial court. We read *Dunn* to stand for the proposition that verification of a petition in a dissolu-

---

**4.** The record does not reveal why the wife conspicuously avoided making a sworn statement about the irretrievable breakdown of the marriage; the reason appears an attempt to avoid the consequences of applicability of §§ 452.305.-1(2) and 452.320.1. The process of legal separation in Missouri has been characterized as "confusing, lacking in statutory and common law, virtually ineffective and expensive...." J. Cochran, 21 Missouri Practice, *Family Law* § 18.1 at 394 (1990). Another author has stated, "A person attempting to plead a cause of action for legal separation is faced with the real and present danger of not being able to plead this cause of action under existing statutory and case law.... It would appear that legal separation as a remedy has been relegated to a defensive remedy and not one that is readily available to the initiating petitioner who may not wish to be pushed into a dissolution." F.C. Moon, "Legal Separation Pleading: 'A Catch-22,'" 45 J.Mo.Bar 549, 551–52 (1989). Mr. Moon urges the legislature to "redefine 'when and how' a cause of action for legal separation may be requested and what elements are necessary to state a cause of action for this remedy." Id. at 552.

tion proceeding is a jurisdictional requirement; we do not see in *Dunn* any statement that jurisdiction is the *only* purpose of verification. Relying on *Ellis v. Ellis,* 263 S.W.2d 849 (Mo.1954), the wife argues that once a trial court acquires jurisdiction through a verified petition, subsequent pleadings need not be verified. We note that *Ellis* was decided before enactment of the Dissolution of Marriage Law, §§ 452.-300 et seq., and no statute comparable to § 452.320.1 was at issue in that case.[5] The issue before us is not trial court jurisdiction; it is the meaning of the language of § 452.320.1.

In construing statutes, our primary responsibility is to ascertain the intent of the legislature. *Community Fed. Sav. & Loan Ass'n. v. Director of Rev.,* 752 S.W.2d 794, 798 (Mo.banc 1988). Rules or canons of construction are subordinate to our ultimate goal of determining the legislative intent. *State ex rel. Ashcroft v. Union Electric Co.,* 559 S.W.2d 216, 221 (Mo.App.1977). The following canons of construction assist us in our task of ascertaining that the legislature meant when it enacted § 452.320.1.

We must give meaning to each word, clause, sentence, and section of the law under consideration. *State ex. rel. Mo. State Bd. of Regis. for the Healing Arts v. Southworth,* 704 S.W.2d 219, 225 (Mo. banc 1986). Related clauses are to be considered when construing a particular portion of a statute. *Marre v. Reed,* 775 S.W.2d 951, 953 (Mo. banc 1989). We must consider all provisions of the entire legislative act, construe them together, and, if possible, harmonize them. *Community Federal,* 752 S.W.2d at 798. Various sections of a single act should be construed together so as to render the act a consistent, homogeneous whole. *Union Electric,* 559 S.W.2d at 221. We presume the legislature intended a logical result, not an ab-

surd or unreasonable result. *State ex rel. Lebeau v. Kelly,* 697 S.W.2d 312, 315 (Mo. App.1985).

Section 452.320.1 is not a model of clarity. Nevertheless, we believe application of the above noted canons of construction yields a determination of the intent of the legislature.

First we examine § 452.320.1 itself. To determine the meaning of the phrase "If ... one of the parties has so stated and the other has not denied it ..." we must consider the previous phrase "If both of the parties ... have stated under oath or affirmation that the marriage is irretrievably broken...." We believe the phrase "so stated" encompasses two aspects of the previous clause: a *sworn* statement about *irretrievable breakdown.* In the phrase "has not denied it," the antecedent of the pronoun *it* must, logically, refer to the alleged irretrievable breakdown. Internal analysis of § 452.320.1, however, does not compel the conclusion that the legislature intended the denial be sworn. Thus we turn our examination to § 452.320 in its entirety.

We believe the legislature contemplated three general categories of situations to be covered by § 452.320: (1) agreement under oath by the parties that the marriage is irretrievably broken (§ 452.320.1); (2) disagreement under oath by the parties that the marriage is irretrievably broken (§ 452.320.2); and (3) a sworn allegation of irretrievable breakdown and the absence of the *sworn* denial that would make applicable § 452.320.2 (§ 452.320.1). This reading harmonizes the two subsections of § 452.320.

Our reading of the entire legislative enactment, the Dissolution of Marriage Act, §§ 452.300 et seq., further convinces us the legislature intended the denial be verified.

---

5. The wife's position is not aided by recent cases which espouse the general rule that the verification requirement is not so strict that it makes an unverified petition "unsalvageable." *See, e.g., Drury Displays v. Board of Adjustment,* 760 S.W.2d 112, 114 (Mo.banc 1988); *Federated Mort. & Inv. Co. v. Jones,* 798 S.W.2d 719, 721 (Mo.banc 1990); *Life Medical System, Inc. v.*

*Franklin County Commission,* 810 S.W.2d 554, 558–59, (Mo.App.1991). At issue in these cases was whether verification could be supplied by amendment. *See also Rodden v. State,* 795 S.W.2d 393, 395 (Mo.banc 1990). Verification by amendment is not an issue in the case before us.

In the Dissolution of Marriage Act the legislature directed that petitions for dissolution or legal separation be verified (§ 452.310.2); directed that responsive pleadings, if any, be verified (§ 452.310.4); and directed the trial court how to proceed "[i]f one of the parties has denied under oath ... that the marriage is irretrievably broken" (§ 452.320.2).

We believe that to hold that the legislature did not intend that the denial mentioned in § 452.320.1 be a denial under oath would yield the absurd result that an unsworn denial of irretrievable breakdown of the marriage would require a legal separation decree (if requested) under § 452.305.2 but a sworn denial would require the court to apply § 452.320.2 and grant different relief.

To make § 452.320 a "consistent, homogenous whole," to harmonize all provisions of the Dissolution of Marriage Act, and to avoid an absurd result, we hold the legislature intended the denial in § 452.320.1 to be a sworn denial. Because the denial by the wife that the marriage was irretrievably broken was not verified, there was no denial of that allegation for purposes of § 452.320.1.

Because § 452.320.1 was applicable, the trial court was required to make a finding whether or not the marriage was irretrievably broken. The court made no such finding. However, implicit in the wife's concession, that if her answer should have been verified the trial court should have entered an order of dissolution, is an admission of irretrievable breakdown. Moreover, we believe the trial transcript provides virtually insurmountable proof of the irretrievable breakdown of the marriage. The trial court should have found the marriage was irretrievably broken and, therefore, should have entered a decree of dissolution pursuant to § 452.305.1. We remand this cause to the trial court with directions to enter a decree of dissolution to be effective on the date of the mandate of this opinion.

*The Maintenance Award*

In his second point on appeal, the husband challenges the maintenance award on several grounds. In considering this point, we note our review is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *See Misdary v. Misdary*, 737 S.W.2d 476, 479 (Mo.App.1987). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

The trial court made the following finding of fact, which is relevant to this point on appeal:

12.... [The wife] ... is unable to support herself wholly through appropriate employment.

In its conclusions of law, the trial court stated:

Upon review of the available marital and separate property to be distributed to the [wife], the court concludes this is insufficient to meet her reasonable needs and taking into consideration the employment available to [the wife], the court concludes that [the wife] is unable to support herself. Accordingly, the [wife] is entitled to maintenance. Section 452.-335.1.

First the husband contends that the trial court erred because "there was no substantial evidence that the [wife] was unable to support herself through appropriate employment." Much of the husband's argument under this sub-point challenges the credibility of the wife's evidence. On appeal of a court-tried case, we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Estate of Moore*, 802 S.W.2d 192, 194 (Mo. App.1991).

Under this sub-point, the husband also argues that the trial court adopted an "available employment" standard rather than following the "appropriate employment" language of § 452.335.1(2).[6] Our

---

**6.** Section 452.335 provides in part: "[T]he court may grant a maintenance order ... but only if

it finds that the spouse seeking maintenance:
(1) Lacks sufficient property, including marital

review of the entire maintenance order convinces us that the trial court, despite its use of the phrase "employment available to [the wife]," did not depart from the standard required by § 452.335.1. We believe the statutory language "appropriate employment," applied to this case, embraces "employment available" to the wife considering her physical condition and her need for quarterly medical testing of two weeks' duration.

■ The husband also complains that the trial court failed to consider, or improperly considered, the factors relevant to an order of maintenance. In his argument, the husband concedes that the criteria identified in § 452.335.2(1)–(10) are neither all-inclusive nor mandatory. *See In re Marriage of Reed*, 762 S.W.2d 78, 85 (Mo.App.1988). The trial court recited in its judgment that it had considered the factors set forth in § 452.335.2 before entering its order. The trial court was not required to specifically address each statutory factor. Indeed, a maintenance award is not deficient if the trial court failed to announce that it was made in accordance with statutory factors. *Starrett v. Starrett*, 703 S.W.2d 544, 548 (Mo.App.1985).

■ The trial court is vested with considerable discretion in granting maintenance, and appellate courts interfere with maintenance awards only when the order is "patently unwarranted or is wholly beyond the means of the spouse who pays maintenance." *Marriage of Reed*, 762 S.W.2d at 85. Upon reviewing the record we find evidence from which the trial court could have concluded that the wife's ability to work was limited by medical conditions and that the husband had a greater capacity to work and earn. Gross disparity between the parties' capacity to work and earn is a sound reason for an award of maintenance. *In re Marriage of Jadwin*, 671 S.W.2d 9, 10 (Mo.App.1984).

The record also reveals that the wife's income was substantially below her estimated needs of approximately $1,051 per month, a factor which the trial court may have considered. *Babe v. Babe*, 784 S.W.2d 898, 900 (Mo.App.1990). An award of maintenance may be based on the need to "close the gap" between the income of the spouse who seeks maintenance and that spouse's monthly expenses. *Williams v. Williams*, 753 S.W.2d 101, 102 (Mo.App. 1988). And the trial court properly considered the wife's anticipated expenses for rent, utilities and uninsured medical care even though the wife had been living with relatives since separation and did not, at the time of trial, have those actual expenses. *See Goodwin v. Goodwin*, 746 S.W.2d 124, 127 (Mo.App.1988). We find no error in the trial court's application of the statutory criteria.

■ Finally, the husband claims that, if maintenance was appropriate, it should have been awarded for a limited duration because of evidence of impending improvement in the wife's financial circumstances. The husband argues that "[a] more equitable and fair arrangement would have been to order maintenance for the six to twelve months [the wife] claimed it would take her to reach the licensed position" and he claims the wife has taken a voluntary reduction in income as a bookkeeper so that she can attend real estate school, increase her skills, and have a greater earning capacity. He claims that these facts demonstrate trial court error in not limiting the duration of the maintenance order.

A spouse requesting maintenance has an affirmative duty to seek employment but courts are reluctant to discourage the education of a party to a dissolution. *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262, 264 (Mo.App.1988). Courts may consider the effects of the physical condition of the spouse seeking maintenance on his capacity to work and earn (*see* § 452.335.2(7)) and the time necessary to obtain education that might help him obtain appropriate employment (*see* § 452.335.2(2)). The wife expressed her expectation of increased income in the future and her desire to be

property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support

himself through appropriate employment...."

"independent" once she was licensed as a real estate sales person and commenced selling real estate. However, there was substantial medical evidence which might portend a less favorable financial situation for the wife. Maintenance awards of limited duration should not be based on speculation as to future conditions of the parties. *Siegenthaler*, 761 S.W.2d at 265. Where the time needed for a party to complete education is uncertain, a trial court acts within its discretion by refusing to limit the duration of the maintenance award. *Id.* From our review of the record, we are not persuaded that the husband met his burden to demonstrate that the trial court abused its discretion in making the award. *See Williams*, 753 S.W.2d at 102. There was substantial evidence to support the trial court in its refusal to limit the duration of the maintenance award given the speculative nature of the evidence about the wife's future earnings and the uncertainty of her physical condition and medical needs.

The husband is not without recourse should the wife realize her goal of financial independence. The maintenance award was designated modifiable and the husband may institute a proceeding to modify the award when the wife's circumstances change. *See Siegenthaler*, 761 S.W.2d at 265.

We affirm the trial court's maintenance award to the wife. However, we remand the cause to the trial court with directions to enter a decree of dissolution, to be effective on the date of the mandate of this opinion.

FLANIGAN, C.J., and PARRISH, P.J., concur.