**In re the MARRIAGE OF Lyle F. MANINGER and Kathryn M. Maninger,**

**Lyle F. Maninger, Petitioner/Appellant,**

v.

**Kathryn M. Maninger, Respondent/Respondent.**

**No. ED 81303.**

Missouri Court of Appeals, Eastern District, Division Two.

May 20, 2003.

---

Douglas R. Beach, Ruth Kraus, St. Louis, MO, for appellant.

Hardy C. Menees, JoAnn Trog, Menees, Whitney, Burnet & Trog, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Husband appeals from a decree of dissolution of marriage. He challenges the classification of marital property, award of maintenance, and award of attorney's fees. We reverse and remand the maintenance award. In all other respects we affirm.

Lyle F. Maninger [husband] and Kathryn M. Maninger [wife] were married on June 29, 1968. During the marriage they had three children, all of whom were adults at the time of trial.

Husband was employed as the Chief Planning Examiner for the City of St. Louis, from which he earned over $70,000 in gross wages in 2001. He also received investment income of $1,730 per month. From approximately 1971 through 1992, husband maintained a private architectural practice in addition to his job with the city.

For over 27 years wife had been employed as a kindergarten teacher at parochial schools. For approximately 20 years wife had also held a second job with Sportservice, which operates concession services for professional sports teams. Her duties, at both the baseball stadium and the football dome, which span most of the year, included training concession employees and volunteers, supervising the concession stands during games and special events, and reconciling concession receipts after games. These jobs, taken together, provided her with an average net monthly income of $3,151.38.

Wife suffers from asthma, chronic obstructive pulmonary disease, vasculitis, idiopathic edema, adrenal atrophy, and obesity, the latter two conditions caused by the extended use of prescribed steroids. All of these conditions limit wife's ability to walk. As a result, the stadium has provided her a motorized cart to use at the Cardinal's games, and she is allowed to work from an office close to the entry at the football dome.

Husband received annual checks from his mother from 1982 through 1999 totaling $159,000. Husband also inherited approximately $40,000 in the 1970's. In 1999 he created a trust that opened a new account at Stifel Nicolaus ("Stifel Nicolaus trust account"). By the time of trial, the Stifel Nicolaus trust account was valued at approximately $769,552. Husband also had $170,000 in cash remaining in a Kansas safe deposit box in his and his mother's names from the $200,000 he had placed there when he cashed CD's in 1999 and 2000. He admitted that this was marital property. In addition, husband maintained a money market account which had $16,607 before he paid $5,000 in attorney's fees, and a checking account which had been reduced to $1,000.

Husband had physically abused wife during the course of the marriage. In December, 1981 husband moved into the basement where he resided for nineteen years, during which time he did not pay for the family's food, the children's elementary tuition, the son's high school tuition, two years of one daughter's and one year of the other daughters' high school tuition, and the children's college tuition. Husband concealed the existence of the

Stifel Nicolaus trust account and other accounts from wife. Husband began an extra-marital affair in the summer of 2000. He moved out of the residence in October, 2000.

Husband filed a petition for dissolution of marriage on December 6, 2000. At trial, the parties stipulated that, if husband's mother were called as a witness, she would testify that the checks she wrote to husband were gifts to him. They also stipulated that Exhibits 27 and 28 were the estate records of husband's father and aunt.

At trial, husband claimed that the $199,000 in checks and inheritance money he received from his family were contained in the Stifel Nicolaus trust account and constituted his separate property. He admitted that the Stifel Nicolaus trust account became the final depository of funds that had been in husband's two prior Stifel Nicolaus accounts, cash from $30,000 in marital savings bonds, the net cash he received from his private architectural practice that had originally been deposited in money market accounts and later in one of the prior Stifel Nicolaus accounts, proceeds on the sale of an automobile that had previously been deposited in a passbook account, $30,000 plus interest from savings accounts that had been in the children's names in 1990 and subsequently deposited in accounts in husband's name, $20,000 plus interest from savings accounts that had been in the children's names in 1979 and subsequently deposited in accounts in husband's name, and other marital funds.

Husband was unable to state what percentage of the trust account assets represented money received from his mother or from inheritance and what percentage of the account represented money from marital sources. He testified that he had purchased CD's at several savings and loans with the inheritances and some of the checks and, at a later point in time, had put some of the checks and proceeds from CD's in one of his two prior Stifel Nicolaus accounts. However, he could not trace any of the checks he received from his mother through his past accounts to the current Stifel Nicolaus trust account. He could not testify when his prior Stifel Nicolaus accounts had been opened.

Dr. E.J. Cunningham, a board certified general internist, who has been wife's primary care physician since 1974, testified to wife's medical conditions. He further testified that she was on ten medications and would have to continue taking them for the indefinite future and that most of her conditions were progressive. He testified that he was surprised that wife was still working her second job, given the state of her health. He expressed his opinion that wife's physical condition, including the progressive nature of the asthma and damage done by continued steroid use to treat her asthma, "make her ability to pursue one job full time, much less a second, doubtful." He further testified that, in his opinion, she would not be able to work her primary job much longer.

The trial court entered its Judgment of Dissolution of Marriage on April 22, 2002. It found that husband failed to meet his burden of proof that the $199,000 he attributed to gifts and inheritance was separate property. The court found the mere existence of the cancelled checks and estate documents from years past constituted insufficient evidence that the sums so represented could be traced to any specific present account, and that, even if they could be traced to the Stifel Nicolaus trust account, they would still be commingled with large amounts of marital property. The court found the entire Stifel Nicolaus trust account to be marital property. The court found that there was no separate property to be set aside to either party

other than incidental items of personal property and awarded wife 58% of the marital property.

The court found wife to be a candidate for modifiable maintenance and awarded wife $1,000 per month. The court found husband was culpable of marital fault in physically abusing wife and emotionally abusing the children, and in engaging in an extra-marital affair before the parties separated in October, 2000. The court awarded wife $18,154.35 for attorney fees and litigation expenses. Husband appeals from this judgment.

## DISCUSSION

■ Our standard of review in a dissolution case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Reed v. Reed*, 969 S.W.2d 287, 288 (Mo. App.1998). We view the evidence and permissible inferences therefrom in the light most favorable to the trial court's decree and disregard all contrary evidence and inferences. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). We defer to the trial court's determination of the credibility of the witnesses. *Rapp v. Rapp*, 789 S.W.2d 148, 150 (Mo.App.1990).

### 1. *Classification of Marital Property*

■ For his first two points husband challenges the trial court's classification of the property that he contends he acquired as gifts or inheritances during the marriage as marital property. He argues that the ruling was contrary to the evidence because the parties stipulated that the gifts from his mother and inheritances from his family were made solely to him and that it misapplied section 452.330.4 RSMo (2000), which provides: "Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property."

■ The Dissolution of Marriage Act consigns the division of marital property to the sound discretion of the trial court. *Dardick v. Dardick*, 670 S.W.2d 865, 868 (Mo. banc 1984). We "must defer to the trial court's judgment unless the judgment is improper under the principles of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), or an abuse of discretion is shown." *Id.; Burbes v. Burbes*, 739 S.W.2d 582, 585 (Mo.App.1987). "A trial court possesses broad discretion in identifying marital property." *Absher v. Absher*, 841 S.W.2d 293, 294 (Mo.App.1992). When characterizations of property as marital or separate rest on an assessment of witness credibility, we defer to the trial court's determination of that credibility. *Feinstein v. Feinstein*, 778 S.W.2d 253, 261 (Mo.App.1989). We presume the division of marital property to be correct. *Halupa v. Halupa*, 943 S.W.2d 272, 277(Mo.App.1997). The party challenging the division has the burden to overcome that presumption. *Id.* Not every error in classifying property is necessarily prejudicial or requires reversal. *Id.* at 278.

■ We presume property acquired during a marriage to be marital property. Section 452.330.3. However, a party can overcome the presumption by showing that it falls within one of the categories listed in section 452.330.2, including that the party acquired the property by gift, bequest, devise or descent. Section 452.330.2(1). The party claiming that property is nonmarital bears the burden of proving the property is separate property by clear and convincing evidence. *Rapp*, 789 S.W.2d at 150. Husband had the burden of showing that a portion of the Stifel Nicolaus ac-

count could be traced to specific non-marital assets. *Klockow v. Klockow*, 979 S.W.2d 482, 488 (Mo.App.1998).

Husband claims that $199,000 of the assets in the Stifel Nicolaus trust account was non-marital because he had received that amount in gifts and inheritances. The parties' stipulation that husband received certain moneys as gifts or inheritances in the past does not support a finding that the dollar amount of those gifts constituted a non-marital portion of the Stifel Nicolaus trust account.

Husband testified that he deposited the gifts and inheritances into either CD's or his two prior accounts at Stifel Nicolaus and redeposited the proceeds of his CD's into one of his prior Stifel Nicolaus accounts. He claimed that these amounts eventually ended up in the Stifel Nicolaus trust account created in 1999. As previously set out, the Stifel Nicolaus trust account also contained substantial amounts of marital funds that also had been deposited and redeposited over the years in various accounts, including the prior accounts at Stifel Nicolaus. Husband could not trace any one check through his accounts to the Stifel Nicolaus trust account. He could not determine what percentage of the funds in the Stifel Nicolaus trust account were separate or marital.

Although section 452.330.4 provides that commingling, in and of itself, is insufficient to transmute separate property into marital property, we have held that a trial court does not err in finding an account to be marital where a spouse has commingled an inheritance and repeatedly reinvested the commingled funds and cannot sustain his burden of tracing his separate funds. *Drikow v. Drikow*, 803 S.W.2d 122, 126 (Mo.App.1990). The trial court's finding that husband failed to carry his burden of proving that $199,000 should be set aside to him as separate property is supported

by the evidence. The trial court did not abuse its discretion or misapply the law in determining that the entire Stifel Nicolaus trust account was marital. Points one and two are denied.

### 2. *Maintenance*

For his third, fourth, and fifth points husband contends that the trial court erred in awarding wife monthly maintenance in the amount of $1,000. He first claims wife's expenses included items that were inflated, not supported by the evidence, and not consistent with the parties' standard of living during the marriage. He next asserts that the court failed to consider the income-producing property that was awarded to wife in the dissolution decree. Husband finally maintains that the maintenance award was based on speculation about wife's future ability to work.

A court can award maintenance to a spouse only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and that the spouse is unable to support herself through appropriate employment. Section 452.335.1 RSMo (2000); *Chapman v. Chapman*, 871 S.W.2d 123, 125–126 (Mo.App.1994). If this threshold test is met, the trial court must then consider all relevant factors, including those enumerated in subsection two of the statute, to determine the amount and duration of maintenance. Section 452.335.2. Husband's three points in this section all relate to the threshold test.

Wife's amended statement of income and expenses listed her average monthly expenses as $4,964.02. Wife admitted that $142 and $80 in these expenses were duplicative and should not be claimed. Thus, by wife's own concession, her claimed monthly expenses were reduced to

$4,742.02. Husband challenges the reasonableness of certain other enumerated expenses.

Wife's amended statement of income and expenses also listed her average net income as $3,151.38, of which $1,913.22 represents her primary employment and $1,238.16 represents her secondary employment. In addition, wife was awarded one half of the Stifel Nicolaus trust account, which earned $1,145.63 during February, 2002. Pursuant to this evidence, her share of this account would provide her an additional $570 per month. Wife was also awarded the $170,000 in cash that husband had in a safety deposit box and $11,888 in non-interest bearing checking accounts. If this cash was invested similarly to the Stifel Nicolaus account, it could be fairly anticipated that it would earn approximately $270 per month. Thus, under the evidence adduced at trial, the marital property awarded wife would provide her additional income of $840 per month.

 We cannot determine whether the trial court erred in its consideration of wife's expenses and her income from marital property because the amount of expenses that the trial court found reasonable and the amount of investment income that the trial court considered cannot be deduced without knowing the amount of income the trial court found wife could earn from appropriate employment. That question brings us to husband's claim that maintenance was awarded on speculation that wife would not be able to work in the future, rather than on consideration of evidence of wife's present circumstances. Accordingly, we will take up this issue first.

At trial both wife and her physician testified to her poor health, and wife testified that she would like to discontinue her secondary employment because of her poor health, which would reduce her monthly income. She also requested $1,000 per month in maintenance.

The court found, based on Dr. Cunningham's testimony, that wife's "primary employment as a teacher and her secondary employment in the concession business are in jeopardy because of her multiple health problems." It cited Dr. Cunningham's testimony that she "was physically unable to continue her secondary employment much longer, if at all, and may not be able to teach in the near future." The court found that, "[I]n such event [wife] loses either or both sources of income," she will lack sufficient property including marital property apportioned to her, to provide for her reasonable needs, and will be unable to support herself through appropriate employment. The court stated that it considered all relevant factors set forth in Section 452.335.2(1) to (10) and found wife to be a candidate for modifiable maintenance. The court found the following factors to be relevant: the comparative earning capacity of each spouse based on each spouse's primary employment; the duration of the thirty-three year marriage; wife's age and physical condition; husband's marital misconduct; and wife's "meritorious conduct in raising and significantly supporting the children and providing (with the help of her family) for the parochial[,] secondary[,] and college education of the child through extraordinary amounts of secondary employment which may not have been necessary in light of the financial situation of the parties, the details of which were completely controlled and kept secret from her by Husband."

 A dissolution court's award of maintenance must be based on the parties' existing circumstances. *Brooks v. Brooks,* 957 S.W.2d 783, 791–92 (Mo.App.1997). The court can properly take into consideration the fact that a spouse's ability to work is limited by medical conditions and

determine appropriate employment based thereon. *McCallister v. McCallister*, 809 S.W.2d 423, 429 (Mo.App.1991). If there is substantial evidence that a spouse's current health does not permit a certain level of employment, the trial court may find "appropriate" employment to be such that health permits. *Ellis v. Ellis*, 970 S.W.2d 416, 418–19 (Mo.App.1998); *Creech v. Creech*, 992 S.W.2d 226, 229–30 (Mo.App. 1999). A second job may not be "appropriate" employment for a number of reasons, including when the spouse's health does not permit such employment. Alternatively, if a spouse's current health allows a level of employment that produces sufficient income to meet the spouse's needs, but there is substantial evidence of the potential for a future inability to work, the court can award a nominal amount of maintenance that can be modified when the change occurs. *McBane v. McBane*, 553 S.W.2d 521, 524 (Mo.App.1977). This evidence must exceed mere guesswork or speculation. *Abney v. Abney*, 575 S.W.2d 842, 844 (Mo.App.1978).

In this case the court's findings setting out the basis of its award of maintenance are ambiguous or conflicting. It is arguable that the trial court concluded that, given the evidence of wife's poor health, secondary employment was inappropriate and did not consider the income therefrom in determining wife's income from appropriate employment. This is supported by the fact that the trial court mentioned only wife's primary employment in its finding on the spouses' comparative earning capacity. However, such a conclusion conflicts with the trial court's finding that addressed wife's need for maintenance, which was phrased in a manner that suggests that the court was determining wife's need based on a future change of circumstances in that it found need "in such event" she loses either or both sources of income. But, the amount awarded is inconsistent

with this language. Assuming for the purposes of this discussion that the trial court found wife's claimed expenses reasonable, the amount of monthly maintenance awarded, $1,000, is more than her need if her income from secondary employment is considered, but less than her need if her income from secondary employment is not considered.

We will not speculate on what grounds the trial court ruled by sifting through findings that are inconsistent and ambiguous. *Burton v. Donahue*, 959 S.W.2d 946, 948 (Mo.App.1998). A judgment based on inconsistent and ambiguous findings must he reversed and remanded. *Id.*

On remand, after determining wife's appropriate employment and income therefrom, the trial court should also calculate the additional income that the marital property apportioned to wife would produce. The trial court should then, based on its assessment of the credibility of the witnesses and evaluation of the merits of wife's claimed expenses, determine if wife has a deficiency establishing her need for maintenance. *McCallister*, 809 S.W.2d at 429; *Childers v. Childers*, 26 S.W.3d 851, 857 (Mo.App.2000). If it finds a need, it may award maintenance pursuant to its findings under Section 452.335.2, which have not been challenged.

*3. Attorney's Fees*

For his sixth point husband asserts that the trial court erred in ordering him to pay the full amount of wife's attorney fees, $18,154.35. He contends that the award is not proper under Section 452.355.1 RSMo (2000). This section gives the court discretion to award attorney's fees after considering all relevant factors, including the financial resources of the parties, the merits of the case, and the

parties' actions during the pendency of the action. The court is considered an expert on the necessity, reasonableness and value of an attorney's services. *Kaminsky v. Kaminsky,* 29 S.W.3d 388, 390 (Mo.App. 2000). We will not overturn an award of attorney's fees on appeal unless there is a clear abuse of discretion. *Ansevics v. Cashaw,* 881 S.W.2d 247, 250 (Mo.App. 1994). An appellant has the burden of showing the award was " 'clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.' " *Id.* (quoting *Meservey v. Meservey,* 841 S.W.2d 240, 248 (Mo.App. 1992)).

▬▬▬ In this case husband has a substantially higher income than wife, which gives him a greater ability to pay. One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse. *Ansevics,* 881 S.W.2d at 250. In addition, the trial court found husband "culpable of marital fault" in that he subjected wife to rage and physical abuse, engaged in an extra-marital affair prior to separation, and kept his financial situation secret from wife, forcing her to take secondary employment to provide for the children's education. A trial court may also consider a spouse's conduct during the marriage in determining attorney's fees. *In re Marriage of Kovach,* 873 S.W.2d 604, 608 (Mo.App.1993). Because husband had a greater ability to pay and committed misconduct during the marriage, the trial court did not abuse its discretion in ordering him to pay wife's attorney's fees. Point six is denied.

*Conclusion*

That part of the judgment of the trial court awarding maintenance is reversed and remanded with instructions to determine liability for maintenance in a manner consistent with this opinion. On remand,

the court may receive additional evidence, including evidence of wife's current medical condition, her current ability to work, and the amount of income the marital property awarded to her currently generates. *See Breihan v. Breihan,* 73 S.W.3d 771, 777–78 (Mo.App.2002); *In re Marriage of Clarke,* 950 S.W.2d 11, 13 (Mo. App.1997). In all other respects the judgment is affirmed.

PAUL J. SIMON, P.J., and GARY M. GAERTNER, SR., J., concur.