**Susan R. WOODARD,**
**Respondent/Cross–**
**Appellant,**

v.

**George B. WOODARD,**
**Appellant/Cross–**
**Respondent.**

**No. ED 86947.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 19, 2006.

Theodore H. Lucas, St. Louis, MO, for appellant.

Vita G. Tocco, Ballwin, MO, Daniel R. Schramm, Chesterfield, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

George Woodard ("Husband") appeals from the trial court's judgment dissolving his marriage to Susan Woodard ("Wife"). Husband contends the trial court erred in awarding Wife (1) sixty percent of the marital property and (2) $11,940.00 per month in maintenance. We affirm in part, and reverse and remand in part.

### Facts

Husband and Wife were married on June 29, 1974. They have two children, both emancipated at the time of the dissolution. The parties separated on November 28, 2003. In December 2003, Wife filed a Petition for Dissolution of Marriage, in which she sought, *inter alia,* maintenance. Thereafter, Husband filed a Cross–Petition for Dissolution of Marriage.

The parties tried the matter over six days in February through April 2005. The issues at trial concerned the value of various business interests, the characterization as marital or separate property of certain shares of stock in Woodard Cleaning and Restoration, Inc. ("Woodard"), a family business in which Husband was employed, the division of marital property, and the need for and amount of any spousal maintenance.

Throughout the marriage, Husband was employed by Woodard. Eventually, he and his brother obtained an ownership interest in Woodard. At the time of dissolution, Husband owned twelve shares of stock in Woodard. Husband also had ownership interests in various companies relating to Woodard. The record reveals that Husband's income steadily increased throughout the marriage. At the time of trial, Husband reported an average net income after taxes of $26,050 per month, or $312,600 per year.

In the early years of the marriage, Wife was employed as a full-time school teacher until 1977 when she and Husband had

their first child. In 1980, Wife returned to work full-time as a teacher and taught until 1984. After 1984, Wife worked periodically as a substitute teacher. The record reveals that Wife's highest annual salary was $22,000.

The record reveals that Husband and Wife enjoyed a comfortable, upscale lifestyle. Husband and Wife lived in expensive homes. At the time of dissolution, they resided in a home in an affluent St. Louis suburb that sold for $675,000. Husband and Wife also owned a condominium in Colorado and another home in St. Louis in which their daughter resided. The parties traveled frequently taking regular vacations both in and out of the country. Additionally, they purchased higher-end vehicles regularly.

Prior to trial, Husband and Wife filed a "Stipulated Values Memorandum" in which the parties stipulated to the values of certain marital assets and debts, except for the value of the various business interests, agreed that all property owned by the parties was marital property subject to division, except for eight shares of stock in Woodard, which Husband claimed as his separate property, and agreed to a 5.42% rate of return on investments to be used by the Court.

The trial court entered Findings of Fact and Conclusions of Law on July 28, 2005, dividing the extensive marital property between the parties pursuant to their memorandum and the evidence presented at trial. The trial court determined that eight shares of stock in Woodard were Husband's separate property and four shares of the Woodard stock were marital property. The trial court found that the value of the marital estate totaled $3,146,067. The trial court allocated to Husband specific marital assets and debts having a net value of $1,914,432 and allocated to Wife specific marital assets with a value of $1,231,635.

Ultimately, the trial court awarded Husband forty percent and Wife sixty percent of the marital assets. As grounds for the disproportionate shares, the trial court found that a "disproportionate division in favor of Wife is justified in light of the magnitude of the separate assets of Husband and the fact that Husband is in a better position to enhance his resources" even if Wife found employment.

Husband was awarded all right, title and interest in the various Woodard-related businesses. More specifically, the trial court awarded Husband the following income producing marital assets: Capital Group Securities valued at $202,956, A.G. Edwards Securities valued at $434, Snaptex ownership interest valued at $234,019, Signature Craft ownership interest valued at $77,000, Woodard Cleaning and Restoration Inc. ownership interest valued at $582,486, GBC Enterprises ownership interest valued at $612,247. Husband was also awarded money market and other bank accounts totaling $117,394. To equalize the distribution, the trial court ordered Husband to pay Wife a cash payment of $656,005. The trial court rejected Wife's request to order Husband to pay this amount in specified installments and maintain a life insurance policy to insure Wife's receipt of this cash payment. Rather than fashion a mechanism for the payment of the $656,005, the trial court stated "the court will leave it to the parties and their counsel to determine the best method of satisfaction of the provision of the judgment [sic] calling for the payment of $656,005 by Husband to Wife." The trial court also awarded Wife maintenance in the amount of $11,940 per month. Husband appeals.

### Standard of Review

Provisions in a divorce decree will be affirmed unless there is no substan-

tial evidence to support them, they are against the weight of the evidence, or the trial court incorrectly declares or applies the law. *Hammer v. Hammer*, 139 S.W.3d 239, 240 (Mo.App. W.D.2004). The trial court exercises broad discretion in dividing marital property. *Travis v. Travis*, 163 S.W.3d 43, 47 (Mo.App. W.D.2005). We affirm the trial court's property division so long as it is not so unduly weighted in favor of one party as to constitute an abuse of discretion. *Id.* Moreover, we presume the trial court's property division is correct. *Id.* The party challenging the division bears the burden of overcoming the presumption. *Id.*

■■ With regard to maintenance orders, the trial court is granted broad discretion, and "[t]he evidence is viewed favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Brooks v. Brooks*, 957 S.W.2d 783, 786 (Mo.App. W.D.1997) (internal citations omitted). We will not reverse the trial court's award of maintenance absent an abuse of discretion. *Id.*

### Discussion

In Husband's first point on appeal, he argues that the trial court failed to properly apply the factors set forth in Section 452.330 RSMo when it awarded sixty percent of the marital property to Wife. More specifically, Husband contends that: (1) the contribution of each spouse to the marital property favored an equal division; (2) the economic circumstances of the parties did not justify a disproportionate award in light of the maintenance award and Wife's unimpaired earning capacity; and (3) the weight given by the trial court to Husband's non-marital property had a substantial material impact on the overall division of property.

■ To determine the appropriate division of marital property, the trial court considers the factors delineated in Section 452.330.1 which provides in pertinent part:

(1) The economic circumstances of each spouse at the time the division of property is to become effective ...;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the non-marital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

*Id.* Two guiding principles are inherent in Section 452.330.1: "(1) that property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) the property division should be utilized as a means of providing future support for an economically dependent spouse." *Holt v. Holt*, 976 S.W.2d 25, 28 (Mo.App. W.D.1998).

Husband argues that the property division "stands or falls" on whether the trial court properly applied two of the five statutory factors: (1) economic circumstances of each party and (2) the value of the non-marital property. Contrary to Husband's assertions, we conclude that the trial court properly applied both factors in arriving at the property division.

■ The record supports the trial court's determination that "Husband is in a better position to enhance his resources through continued lucrative employment." At the time of trial, Husband was earning an average net monthly income of $26,050 from his various businesses. Wife was unemployed throughout most of the marriage. Her highest salary reached $22,000

and she had not been employed full-time since 1984.

Husband disagrees with the trial court's assessment, arguing he is 59 years old and his brother has the right to exercise a buy-out of his Woodard shares in 2008. However, other than these conclusory assertions, Husband has pointed to no record evidence establishing that either one of these factors will reduce his economic circumstances.

Husband also argues that the trial court failed to take into account that certain assets allocated to him were "largely illiquid." The record establishes otherwise. The trial court discounted the value of Husband's interest in Woodard to account for a "lack of marketability." Although Husband claims that he would have to borrow money to pay the $656,005 awarded to his wife and the interest would consume a large part of his marital property award, there is no evidence in the record to this effect. Indeed, as discussed below, the trial court did not include any instructions relating to the payment of the $656,005 awarded to Wife. Thus, Husband's claim that interest on a non-existent loan would consume a large part of his marital property is entirely speculative and not a persuasive ground for overturning the trial court's award.

Husband also attacks the trial court's application of the statutory factor requiring consideration of the value of the non-marital property set apart to each spouse. Husband's principal attack is on the trial court's use of *Woodson v. Woodson*, 92 S.W.3d 780 (Mo. banc 2003) to support its determination of the propriety of the 60/40 split. However, a review of the trial court's order reveals that the trial court used *Woodson* in exactly the manner Husband urges, i.e. as a caution against allowing non-marital property to work a "substantial material impact" on the division of the marital property.[1]

The record supports the trial court's determination that Husband received the more lucrative share of the income-producing property. Moreover, the record reveals that the rates of return on Husband's interests were well above the 5.42% stipulated to by the parties. Indeed, Husband's expert testified that the shareholder distributions for 2004 generated a 21.6% rate as return on the total value of Woodard shares. By contrast, the trial court found that Wife could earn $54,000 annually from her income-producing property.[2]

Husband's reliance on *M.A.Z. v. F.J.Z*, 943 S.W.2d 781 (Mo.App. E.D.1997), and *Lombardo v. Lombardo*, 992 S.W.2d 919 (Mo.App. W.D.1999) is not persuasive. The facts of both cases are quite different and, on the record before us here, unlike in *Lombardo* and *M.A.Z.*, Husband has failed to demonstrate an abuse of discretion. Point denied.

In Husband's second point, he contends the trial court erred in awarding $11,940 per month to Wife for maintenance because: (1) the expenses shown on Wife's Statement of Income and Expense were grossly overstated and not supported by the evidence; (2) the trial court did not include in its calculation the cash payment

---

1. The "substantial material impact" rule articulated in *Woodson* appears apply only in dissolution cases involving teacher's retirement benefits. We do not express an opinion on whether the *Woodson* rule should be applied more generally.

2. As we note below, Wife's receipt of the $656,005 equalization payment may well impact her annual income. However, on this record, we are unable to say to what extent because the trial court did not provide for a method of payment and there is no evidence before us that Wife has received or will receive the payment.

of $656,005 in determining Wife's income per year; and (3) the trial court failed to impute any income to Wife. Husband does not contend that maintenance should not have been awarded but rather argues the amount of maintenance exceeded Wife's reasonable needs.

Section 452.335.2 RSMo 2000 provides guidance to the trial court in determining the appropriate amount of maintenance to be awarded by setting forth a list of factors to consider. The factors relevant to this case include Wife's financial resources, including the marital property awarded to her, and her ability to meet her needs independently, the duration of the marriage, the standard of living during the marriage, the duration of the marriage, the separate property awarded to each party, and the ability of Husband to meet his needs while meeting those of Wife. *See* Section 452.335.2 RSMo 2000.

■ Husband contends that the amount of maintenance was not justified because the expenses shown on Wife's Statement of Income and Expenses were not supported by the evidence. We find the trial court did not abuse its discretion in awarding maintenance based upon Wife's statement of income and expenses as there is substantial evidence that Wife and Husband had a high standard of living. *See L.A.L. v. L.L.*, 904 S.W.2d 50, 54 (Mo. App. E.D.1995) (noting that the standard of living during the marriage is of particular importance where the marriage is one of long duration). Further, the trial court reduced Wife's expenses by $13,000 to bring her expenses in line with Husband's claimed expenses.

■ Husband also argues the trial court erred by not imputing income to Wife who had a bachelor's and master's degree in education. Here, there was no evidence in the record establishing Wife's potential earnings other than Husband's claim that she earned $22,000 in 1984. The trial court acted within its discretion when it refused to impute income to Wife. *See Breihan v. Breihan*, 73 S.W.3d 771, 776 (Mo.App. E.D.2002).

Finally, Husband asserts that the trial court erred by "concluding that Wife would earn pre-tax income of $54,200 per year from the assets she received in the marital property division" where it failed "to consider the cash payment the [trial] court ordered Husband to make of $656,005, which is an investable asset." In the judgment, the trial court "left it to the parties and their counsel to determine the best method of satisfaction of the provision of the judgment calling for the payment of $656,005 by Husband to Wife."

■ Section 452.335.2 requires the trial court to consider the marital property awarded to the spouse in determining the amount of maintenance to award. Here, it is not clear from the record whether the trial court considered the $656,005 payment in its determination of Wife's maintenance award. Although the trial court included the $656,005 in its marital property division worksheet, we cannot discern whether it was considered when calculating Wife's annual income of $54,200.

Because the record is unclear with respect to the impact of the $656,005 on Wife's annual income and in turn on her maintenance award, we reverse the award of maintenance and remand the case to the trial court for additional proceedings to determine how and when Wife is to receive the $656,005 and to what extent, if any, the $656,005 impacts the maintenance award.

## *Conclusion*

The judgment is affirmed in part and reversed and remanded to the trial court

for proceedings consistent with this opinion.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., concur.