Brenda WORKMAN, Respondent,

v.

Steven WORKMAN, Appellant.

No. ED 92177.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 1, 2009.

Lisa Adams, Cordell & Cordell, P.C., St. Louis, MO, for Appellant.

Kimberly Tomko, Flynn & Davenport LLC, Troy, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Steven Workman (Husband) appeals from the trial court's Findings, Conclusions and Judgment of Dissolution of Marriage (Judgment) awarding Brenda Workman (Wife) certain property, maintenance, child support, and attorney's fees. We affirm.

### Background

Husband and Wife were married on May 21, 1988, in Lincoln County, Missouri. Three children were born of the marriage and were unemancipated at the time of the dissolution. The parties separated on March 26, 2007.

On May 4, 2007, Wife filed a Petition for Dissolution of Marriage (Petition). Wife's Petition requested that Wife be granted joint legal and sole physical custody of the children, that the court order a division of the marital property disproportionately in her favor "for [Husband's] substantial and heinous marital misconduct" or make a finding that the parties' Separation Agreement is not unconscionable, and that the court award her attorney's fees and maintenance.

Husband answered Wife's Petition and filed a cross-petition for dissolution of marriage on June 15, 2007. In his cross-petition, Husband requested the court award joint legal and physical custody of the children to both parties, award child support, divide the marital property disproportionately in his favor because his contributions were greater than that of Wife and he owned the marital home four years prior to the marriage, and order Wife to pay court costs. Wife answered Husband's cross-petition for dissolution on July 10, 2007.

In the meantime, Wife filed a motion for temporary child support, child custody, maintenance, attorney's fees, suit money, and costs on May 17, 2007. Husband answered Wife's motion and also filed a cross-motion for temporary custody.

On June 29, 2007, the court entered an order and judgment pendente lite. The court ordered that (1) Husband should pay $1000 per month to Wife for child support, (2) the parties' remaining tax return checks be deposited in the trust account of Flynn & Davenport, LLC (Trust Account) to pay a past due bill and one of the children's school tuition and fees, (3) the children continue to reside with Wife pending further review by the Guardian ad Litem and Husband refrain from "texting" or communicating with the children regarding the dissolution and attempts to contact Wife, and (4) the Trust Account also be used to pay the monthly mortgage and a previous outstanding judgment.[1]

---

1. Missouri Supreme Court Rule 84.04 mandates that a brief contain a "Statement of Facts" and that the "statement of facts shall be a fair and concise statement of the facts

A trial on the dissolution proceedings took place on May 9 and June 3, 2008. The trial court entered its Judgment on August 22, 2008. The trial court made the following findings and judgments regarding the parties and their property.

**Separate Property**

The trial court identified separate property of Wife, including a 1986 Dodge van and a 1999 Featherlite horse trailer, but found Husband had no identifiable separate property.

**Marital Property**

In its findings the trial court explained that Husband "is guilty of marital misconduct which, in the opinion of the Court, has imposed on [Wife] greater and additional burdens than are normally undertaken by a spouse in a marital relationship and which may be considered in apportioning the marital property and fixing the amount of maintenance payable to [Wife]."

Husband was awarded the following marital property: household furnishings, furniture, and miscellaneous personal property in Husband's possession; 1999 Ford pickup, 1998 Landa jon boat, 1998 boat trailer, 1990 outboard motor, 1973 Harley Davidson, 1979 Jeep, 1978 Landa boat, 1978 Jeep, and 1971 box trailer; funds in any accounts in Husband's individual name; amounts payable to him under the General Motors Corporation Personal Savings Plan (GM Savings Plan)[2]; and his 2007 tax return.

The trial court awarded Wife the following marital property: the marital home in Troy, Missouri (Marital Residence); household furnishings, furniture, and miscellaneous personal property in Wife's possession; all livestock, including three horses for the children; a 1992 Chevy truck, 1986 Dodge van, 1999 horse trailer, manure spreader, cub cadet, and tractor; funds in any accounts in Wife's individual name; and amounts payable to Wife under the American Funds and Pioneer accounts. The trial court also awarded Wife a percentage of any benefits payable to Husband under his General Motors Corporation Retirement Plan. In order to balance the property division, Husband was also ordered to pay Wife $52,000.

The trial court also ordered a number of items to be auctioned and the parties to split equally any money from the sale of the items.

**Marital Debts**

The trial court ordered Wife be held responsible for the remaining mortgage on the Marital Residence and the debt to Capital One. The debts to Sears, HSBC, and JC Penney were to be paid from the Trust Account.

---

relevant to the questions presented for determination without argument." Husband's rendition or interpretation of the "facts" is precariously close to violating this Rule as Husband at times fails to set forth the applicable facts truthfully, and instead "stretches the truth" on several occasions. Husband also uses a large portion of the "Statement of Facts" to argue his position and make conclusions. One example of Husband's misstatement of the facts relates to the payment of the mortgage on the marital residence. Husband states in his brief that in the court's judgment pendente lite he was ordered "to pay $601.96 for the marital residence." However, the order clearly indicates that the monthly mortgage of $601.96, among other expenses, was to be paid from the Trust Account that was set up for the pendency of the dissolution proceedings.

**2.** Husband notes in the Statement of Facts contained in his brief that "[Husband] testified that he started working for GM in 1977. In spite of working for GM for 11 years prior to [] marr[y]ing [Wife] the entire [GM Savings Plan] was defined as a marital asset." Notably, Husband fails to mention that the GM Savings Plan was not started until 1984, only four years before the marriage.

## Maintenance

The trial court found Husband was not in need of maintenance because he had sufficient property to provide for his reasonable needs and he earned an income sufficient to support himself.

As for Wife, the trial court found that due to the length of the marriage and Wife's age, health, lack of readily marketable skills, and lack of a four-year college degree, she was unable to support herself through appropriate employment and lacked sufficient property to provide for her reasonable needs. The trial court thus found it necessary to award Wife modifiable maintenance, which it ordered Husband to pay in the amount of $1200 per month.

## Child Custody and Support

The trial court found that domestic violence and abuse had occurred and as such it was in the children's best interests to be in the custody of the nonabusive parent. The trial court thus awarded Wife sole legal and physical custody of the minor children with reasonable rights of visitation for Husband. Husband was also ordered to pay Wife $1132 per month in child support, pursuant to his proposed Form 14.[3]

The trial court also ordered Husband to continue the children on his health insurance through his employment and to pay 80% of any medical, dental, orthodontic, or other health-related expenses not covered by insurance. Wife was ordered to pay the remaining 20% of those costs. Husband and Wife were also ordered to split the costs of the children's educational and extraordinary expenses, 80% by Husband and 20% by Wife, including private school tuition, fees, uniforms, and book expenses. The same apportionment also applied to the payment of expenses incurred in connection with extracurricular activities and sports.

## Attorney and Guardian ad Litem Fees

The trial court ordered the Guardian ad Litem fees be paid out of the Trust Account and ordered Husband to pay $9000 of Wife's more than $12,000 total attorney's fees, which was based on the parties' percentage of income.[4]

After the Judgment was entered, Husband filed a Motion for a New Trial on September 19, 2008. Husband alleged in his motion that the trial court's findings of fact and conclusions were not supported by the evidence and that the errors "should shock the conscience of the court," citing several perceived errors in the trial court's Judgment. Husband's motion was heard and argued on October 14, 2008. An Order was issued on October 29, 2008, concluding that "the evidence cited by [Husband's] counsel (who was not trial counsel) was not presented to the Court at trial in many instances and therefore the motion for new trial is denied."

Husband filed his timely Notice of Appeal on November 7, 2008. This appeal follows.

### Points on Appeal

Husband presents four points on appeal. First, Husband alleges the trial court erred "in entering a judgment that is so unduly burdensome on [Husband] and so one sided as to shock one's sense of jus-

---

3. Wife's proposed Form 14 proposed child support in the amount of $1372 per month.

4. Again Husband misstates the facts in his brief regarding the payment of the Guardian ad Litem fees. Husband claims that he "is required to pay the Guardian ad Litem fees in the amount of $2,040.00," when the trial court's Judgment actually states that the Guardian ad Litem fees be paid from the Trust Account.

tice." Within his first point, Husband alleges three sub points in which the trial court erred in its Judgment: (1) awarding an excessive amount of marital assets to Wife, (2) awarding Wife attorney's fees, and (3) not considering the ability of Husband to meet his needs while meeting the requirement to pay maintenance.

In his second point, Husband asserts the trial court erred in finding that he had no identifiable separate property. Husband claims this finding is against the weight of the evidence and the trial court should have set aside for him a greater interest in the GM Savings Plan and the Marital Residence before distributing the marital property.

Husband alleges in his third point that the trial court abused its discretion in awarding attorneys fees to Wife when Wife was awarded nearly all of the "correctly determined" marital assets.

Finally, in his fourth point, Husband claims the trial court erred in denying his Motion for a New Trial. Husband asserts the trial court's reasoning in denying his Motion for a New Trial was flawed because Wife's deposition was in evidence at the trial, contrary to the trial court's finding in its denial of his motion.

### Standard of Review

In a dissolution of marriage case, this Court will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *In re Marriage of Maninger*, 106 S.W.3d 4, 9 (Mo.App. E.D.2003). This Court will not retry the case, but instead, accept as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregard all evidence and inferences to the contrary. *Groenings v. Groenings*, 277 S.W.3d 270,

274 (Mo.App. E.D.2009). We defer to the superior ability of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript. *Id.*

### Discussion

### Point I—Distribution of Property, Attorney's Fees, Maintenance

Husband's first point totally lacks any merit and is grossly inadequate in its presentation to this Court. Husband fails to cite relevant legal authority to support his position, and instead engages in an extensive game of "what if" by focusing on hypothetical situations and his financial status in a hypothetical year. Furthermore, Husband fails to comply Rule 84.04 by presenting multiple and separate points of alleged error in a single point on appeal. First, Husband alleges that the trial court erred in awarding an excessive portion of the marital assets to Wife. Second, he asserts that the trial court erred in awarding Wife attorney's fees. Finally, Husband claims that the trial court erred in not considering the ability of Husband to meet his own needs while meeting the requirement to pay maintenance. Despite Husband's failure to comply with Rule 84.04, we consider each point of alleged error *ex gratia.*

### A. Distribution of Property

### Standard of Review

When reviewing a division of marital property, we give deference to the trial court, which is vested with considerable discretion in dividing marital property. *Lagermann v. Lagermann,* 109 S.W.3d 239, 242 (Mo.App. E.D.2003). Appellate courts will interfere only if the division of property is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Dardick v. Dardick,*

670 S.W.2d 865, 869 (Mo. banc 1984). It is not *per se* an abuse of discretion if the trial court awards one party a considerably higher percentage of the marital property than it awarded the other party. *Souci v. Souci*, 284 S.W.3d 749, 755 (Mo.App. S.D. 2009). A division of marital property need not be an equal division, but must only be fair and equitable given the circumstances of the case. *Id.*

▇ A division of property is presumed correct and the party challenging the division must bear the burden of overcoming that presumption. *Id.*

### Analysis

▇ Trial courts must divide marital property, "in such proportions as the court deems just," after considering the relevant criteria set out in Section 452.330. Section 452.330.1; *Dardick*, 670 S.W.2d at 869. These factors include:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Section 452.330.1.

▇ There is no set formula concerning the weight given to each of these factors. *Souci*, 284 S.W.3d at 754. Furthermore, these factors are not exhaustive, and the trial court has great flexibility and far-reaching power in dividing the marital property. *Id.* While the statute requires a fair and equitable division of marital property in light of the circumstances of each case, it does not require an equal division of property. *Dardick*, 670 S.W.2d at 869. "Disparity in the value of marital property awarded each spouse is justified if any of the relevant factors, statutory or otherwise, justify an unequal division." *Souci*, 284 S.W.3d at 754, *quoting Long v. Long*, 135 S.W.3d 538, 542 (Mo.App. S.D.2004).

Husband argues that the property division is not only one-sided but that he "will be forced to consume all the marital assets received by him within [fifteen] years or earlier to pay for the judgment." As with much of his argument, Husband's assertions are based loosely on fact and instead focus on skewing the trial court's Judgment and hypothesizing worst case scenarios. For instance, Husband claims that the Judgment "awards the marital residence valued at $100,000.00 to [Wife] and $52,000.00 for equalization. Thus, [Wife] will receive $152,000.00 in assets, plus personal property. [Husband] will receive the [GM Savings Plan] worth $127,513.23 of which $52,000.00 will have to be given to [Wife]. Thus [Husband] will actually receive $75,513.23 which is less than half the amount awarded to [Wife]." This entire argument is grossly flawed. First, although Wife was awarded the Marital Residence, she was made responsible for the Marital Residence's mortgage, which is more than half the value of the property. Second, nothing in the Judgment requires the $52,000 equalization payment be paid from the GM Savings Plan; Husband has the option of paying any portion of the equalization payment from the substantial property he was awarded including four vehicles, a motorcycle, two boats, two trailers, and an outboard motor, or from his considerable income. Husband also inac-

curately claims that he is responsible for paying the Guardian ad Litem fees, when the Judgment specifically states that such fees are to be paid from the Trust Account. Furthermore, while Husband admits he "will have enough income to cover the Judgment" if he continues to make the income he has historically earned, Husband engages in several pages of "what if" scenarios to conclude that a possibility exists that he will not be able to satisfy the Judgment. Notably absent from Husband's argument is any legal authority to either support his position or otherwise clarify in what way the trial court abused its abundant discretion.

As such, we are not convinced that the trial court's division of marital property between Husband and Wife is so unreasonable as to constitute an abuse of discretion. Examining the factors set forth in Section 452.330.1, we first look at the economic circumstances of each party. The record shows that evidence was presented supporting the trial court's conclusion that Wife's employability and earning potential were adversely affected by her age, health, lack of readily marketable skills, and lack of a four-year college degree. Furthermore, Wife's 2008 gross wages were $1,166.43 per month, while monthly expenses for her and the minor children totaled $4,439.92. Husband, in contrast, averaged a gross income of $96,756.41 per year (an average of $8,063.03 per month) in 2005, 2006, and 2007 and had living expenses of only $2761 per month. The trial court may well have believed that Husband, with his significant income, had the means to support himself and acquire additional assets much more readily than Wife, and therefore felt it fair to consider the income disparity between Husband and Wife in its distribution of marital property.

The record further shows that the trial court gave weight to Husband's marital misconduct, which the trial court found "imposed on [Wife] greater and additional burdens than are normally undertaken by a spouse in a marital relationship." The trial court noted that this misconduct "may be considered in apportioning the marital property." Given Husband's "misconduct," it was well within the trial court's discretion and statutory authority to award Wife a greater share of the marital property.

Finally, Wife also was awarded sole legal and physical custody of the three minor children. Under Section 452.330.1, the trial court was well within its broad discretion to consider this factor in determining the distribution of marital property. Because Wife was to provide for the three minor children, the trial court could have considered Wife entitled to additional marital property and assets in order for her to better care and provide for the parties' children.

We cannot find, and Husband has failed to demonstrate, that the trial court abused its abundant discretion in its division of marital property. Reviewing the statutory factors, we find the trial court acted within its discretion in dividing the property between Husband and Wife.

### B. Attorney's Fees

In the second portion of his first point, Husband claims that the trial court erred in awarding Wife attorney's fees. However, Husband fails to actually address this claim in his argument section. Because this assertion is identical to Husband's third point on appeal, we will review this contention with that point.

### C. Maintenance

Husband alleges in the final subsection of his first point that the trial court erred in failing to consider Husband's ability to

meet his needs while meeting the requirement to pay maintenance. We disagree.

## Standard of Review

■ A trial court is granted broad discretion with regard to maintenance orders and we will not reverse a trial court's award of maintenance absence an abuse of discretion. *Woodard v. Woodard,* 201 S.W.3d 557, 561 (Mo.App. E.D.2006). We review the evidence in the light most favorable to the trial court's judgment, disregarding evidence to the contrary and defer to the trial court even if the evidence could support a different conclusion. *Id.*

## Analysis

■ The purpose of a maintenance award is to close the gap between the income of the spouse who seeks maintenance and that spouse's monthly expenses. *Souci,* 284 S.W.3d at 757. Pursuant to Section 452.335.1, before a trial court may make an award for maintenance, it must first find that the spouse seeking maintenance "(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment . . ." *See also In re Marriage of Maninger,* 106 S.W.3d at 10. Once these findings are made, Section 452.335.2 provides guidance to the trial court in determining the appropriate amount and duration of maintenance to be awarded by setting forth a list of factors to consider. *Woodard,* 201 S.W.3d at 563. These factors include:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

Section 452.335.2.

In awarding Wife maintenance, the trial court found "[Husband] and [Wife] have been married for a significant period, and because of her age, health, lack of readily marketable skills, and her lack of a four year college degree, all of which adversely affect her employability and earning potential, [Wife] is unable to support herself through appropriate employment and lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs." The trial court reasoned that Wife had a deficiency of $1900 per month based on $4,439.92 in monthly living expenses minus $1,166.43 in monthly employment income and $1372 monthly child support. Based on these calculations, the trial court awarded Wife $1200 per month in maintenance, modifiable by either party upon changed circumstances.

Starting with the first step in the maintenance analysis we examine whether Wife

lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs and whether she is able to support herself through appropriate employment. *See* Section 452.335.1. While Husband does not dispute either of these factors, instead arguing that he cannot afford to pay the maintenance award, the trial court clearly made findings on both of these factors. The trial court found, and Husband fails to dispute, that Wife "lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs," and "is unable to support herself through appropriate employment." These undisputed findings satisfy the first step of the maintenance analysis.

Regarding the amount of the maintenance award, the trial court clearly set forth its reasons for awarding Wife maintenance, noting several of the factors specifically set forth in Section 452.335.2. Corresponding to the first factor, the trial court noted that Wife was unable to provide for her reasonable needs, as she is "unable to support herself through appropriate employment and lacks sufficient property" to do so. Regarding the second factor, the trial court noted Wife's lack of education and marketable skills, which adversely affect her employability and earning potential. While not mentioned specifically in the section on maintenance in the Judgment, the trial court also noted the disparities in the parties' earning capacity and the conduct of the parties during the marriage, as directed in the third and ninth factors. As set forth in the sixth factor in Section 452.335, the trial court specifically noted its consideration of the duration of the marriage when discussing maintenance. The trial court also addressed the seventh factor when considering Wife's age and health. It is clear here that the trial court considered the appro-

priate statutory factors when making its award of maintenance.

Husband suggests that the trial court erred because it failed to consider the eighth factor, "[t]he ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Section 452.335.2(8). Husband's argument, distilled to its simplest terms, is that he should not have to pay maintenance because he cannot afford the expense. Husband attempts to support his argument by devoting several pages of his brief to hypothetical comparisons of monthly payment models, with and without overtime pay, and engaging in mathematical calculations to conclude that he cannot afford the judgment as entered by the trial court. Husband engages in an in-depth game of "what if," listing potential issues that could arise in the future regarding the status of his job or the company by whom he is employed. Husband is forced to resort to this dubious and strained argument because Husband acknowledges his ability to satisfy the court ordered maintenance based upon the evidence of Husband's income that was before the court. The evidence revealed that as an autoworker for General Motors, husband earned $100,325 in 2005, $92,829 in 2006 and $97,115.22 in 2007. Even during Husband's approximate layoff from General Motors during 2008, the wages husband received during his period of layoff are annualized to $75,616.44. Given this evidence of Husband's income, Husband clearly has the ability to meet his needs while paying the court ordered maintenance. The trial court properly considered Section 452.335.2(8).

The case law is clear that "[a] dissolution court's award of maintenance must be based on the parties' *existing circumstances.*" *In re Marriage of Man-*

*inger*, 106 S.W.3d at 11. (emphasis added). Husband argues that "the judgment of the Trial Court mandates that the punishment for being divorced from [Wife] is to be forced in to a state of involuntary servitude" where "he can never guarantee that he can pay rent or food." We find this argument grossly unpersuasive as the trial court clearly considered Husband's ability to meet his needs while contributing to the needs of Wife. The trial court found that while Husband was working (not during a layoff) in 2005, 2006, and 2007, his average monthly gross income was $8,063.04, according to his federal income tax returns. According to his own exhibit, Husband alleged living expenses of only $2761 per month. After deducting the $1132 per month child support award and the $1200 per month maintenance award, $2,970.04 remains for Husband each month for taxes and other disposable income. Given these findings and considering *only the evidence of income at the time of the trial*, we find that the trial court has not abused its discretion in awarding maintenance based on the statutorily enumerated factors.[5]

Husband's first point is denied.

## Point II—Distribution of Marital Residence and GM Savings Plan

In his second point, Husband argues the trial court erred in finding he had no identifiable separate property. Husband claims the trial court erred in dividing both the Marital Residence and GM Savings Plan as marital property when it should have set aside Husband's greater interest in those assets before determining their distribution. We disagree.

5. Should Husband's predictions of reduced income occur in the future, he is entitled to seek a modification of the maintenance award at which time he may introduce evidence of his then current income.

### Standard of Review

Trial courts possess broad discretion in identifying marital property and we presume the division of marital property is correct. *In re Marriage of Maninger*, 106 S.W.3d at 9. The party challenging a division of property has the burden to overcome that presumption. *Id.*

### Analysis

Section 452.330 governs the distribution of property in dissolution of marriage actions. *Waldon v. Waldon*, 114 S.W.3d 428, 431 (Mo.App. E.D.2003). Pursuant to Section 452.330.1, a trial court "shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors." The trial court must make specific findings on whether assets are marital or separate property prior to a subsequent just division of the marital property. *Waldon*, 114 S.W.3d at 431.

Husband claims that the trial court erred in treating the Marital Residence and the GM Savings Plan as marital property because he acquired those assets prior to the marriage and thus has a separate, nonmarital, interest in both of those assets. Husband asserts that he purchased the marital residence prior to the marriage and argues that the trial court should have first determined his nonmarital investment in the Marital Residence and then divided the remaining portion as marital property. Husband also argues that his contributions to the GM Savings Plan for the more than ten years he worked for General Motors prior to the marriage should have been defined as Husband's separate nonmarital property.[6]

6. While Husband claims in his brief that he began working for General Motors in 1977 and contributed to the GM Savings Plan "for the 10 plus years [ ] prior to the marriage," Husband testified at trial that he only started

However, whether or not the trial court's classification of these assets as marital was in error is irrelevant because even if the classifications were error, they were "invited error." *Lagermann*, 109 S.W.3d at 243.

■■■ Regarding the Marital Residence, Husband specifically classified the Marital Residence as "marital" property on his Financial Statement. While Husband listed the Marital Residence as "mixed" in his Trial Exhibit F, his proposed distribution in that exhibit included awarding half of the equity in the Marital Residence to Wife and half to Husband. Husband did not assert at trial or in his exhibit that he should be awarded a portion of the Marital Residence as separate, nonmarital property before the reminder was divided as marital property. Furthermore, Husband did not introduce any evidence at trial as to the value of the Marital Residence at the time it was purchased, the amount of money Husband paid toward the Marital Residence at the time it was purchased, or the amount of equity in the Marital Residence at the time of the marriage between the parties. The trial court cannot be faulted for dividing property as Husband requested. Because Husband failed to claim at trial or in his Financial Statement that the Marital Residence was, in part, his separate, nonmarital, property, any error committed by the trial court, if any, in treating the Marital Residence as marital property was "invited error." *Lagermann*, 109 S.W.3d at 243. A party, however, cannot rely on "invited error" on appeal. *Kettler v. Kettler*, 884 S.W.2d 729, 732 (Mo.App. E.D.1994) (holding that after the wife listed property as "marital" on her proposed property distribution, any error by the trial court in awarding the property to the husband was an "invited error").

the savings plan in 1984, four years prior to

■■■ Regarding the GM Savings Plan, Husband classified this asset as "marital" on his Trial Exhibit F and failed to list the asset on his Financial Statement. We are unable to find anywhere in the record that Husband proposed the GM Savings Plan be awarded, even in part, to him as separate nonmarital property. As such, consistent with our analysis of the award of the Marital Residence, if indeed the trial court erred in the classification of the GM Savings Plan, such classification was "invited error," upon which Husband cannot rely for appeal. *Lagermann*, 109 S.W.3d at 243; *Kettler*, 884 S.W.2d at 732. Husband cannot fault the trial court for awarding property consistent with the property classifications presented by him to the trial court.

Because any error in the classification of the Marital Residence or the GM Savings Plan, if any, is "invited error," we find the trial court did not abuse its discretion in classifying and dividing these assets. Husband's second point is denied.

### *Point III—Attorney's Fees*

In his third point, Husband alleges the trial court abused its discretion in awarding Wife attorney's fees. We disagree.

### *Standard of Review*

■■■ This Court will reverse a trial court's decision on attorney's fees only if the trial court abused its discretion. *Lagermann*, 109 S.W.3d at 244. An abuse of discretion occurs where the trial court's decision was so arbitrary and unreasonable as to shock one's sense of justice and shows a lack of deliberation. *Id.* The trial court is considered an expert on the necessity, reasonableness, and value of an attorney's services. *In re Marriage of Maninger*, 106 S.W.3d at 13.

the marriage.

*Discussion*

Typically parties in dissolution disputes are responsible for paying their own attorney's fees. *Russell v. Russell,* 210 S.W.3d 191, 199 (Mo. banc 2007). However, a trial court may award attorney's fees pursuant to Section 452.355.1 after considering "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." Section 452.355.1. While financial inability of one spouse to pay attorney's fees is not a requirement in awarding fees, one party's greater ability to pay is sufficient to support an award of attorney's fees. *Russell,* 210 S.W.3d at 199.

Husband argues that Wife was awarded nearly all of the "correctly determined marital assets," thus should not have been awarded attorney's fees as well. Husband repeats the argument set forth in his first point that "within [fifteen] years of the entry of the judgment all marital property awarded to [Husband] will be consumed in paying for the judgment." Based upon these conclusory statements, Husband argues the award of attorney's fees "shock[s] the sense of justice of the court."

The trial court found Husband's gross income was $8,360.42 per month in 2005, $7,735.75 per month in 2006, and $8,092.94 per month in 2007, according to his federal income tax returns. Additionally the trial court found that according to Husband's Statement of Income and Expenses, husband had gross wages of $5,244.37 per month in 2008 during a period he was laid off from his employment with General Motors. The trial court found Husband's living expenses were $2761 per month. On the other hand, the trial court found Wife's income in 2008, according to her Statement of Income and Expenses was $1,166.43 per month, with expenses for herself and the minor children totaling $4,439.92 per month. The trial court's findings indicate Husband had a greater ability to pay the parties' attorneys' fees. Because "[o]ne spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse," we cannot find the trial court abused its discretion in awarding Wife attorney's fees. *In re Marriage of Maninger,* 106 S.W.3d at 13.

Furthermore, "[a] trial court may also consider a spouse's conduct during the marriage in determining attorney's fees." *Id.* As the trial court here found Husband was "guilty of marital misconduct," this finding is also relevant in the trial court's award of attorney's fees.

Husband provides nothing to indicate an abuse of discretion by the trial court in awarding Wife attorney's fees. Husband has not demonstrated that the trial court's award of attorney's fees shocks one's sense of justice or shows a lack of deliberation. Husband's third point is denied.

### Point IV—Motion for New Trial

In his fourth point, Husband asserts the trial court erred in denying his motion for a new trial. In rejecting Husband's motion, the trial court concluded that the evidence cited by Husband in support of his motion for new trial had not been presented by Husband at trial. Husband argues the trial court's denial of his motion is flawed because the Wife's deposition, which was the evidence Husband offered in support of his motion, was presented as evidence at trial. We disagree.

### Standard of Review

This Court reviews a trial court's denial of a motion for new trial for abuse of discretion. *Gallagher v. DaimlerChrysler Corp.,* 238 S.W.3d 157, 162 (Mo.App. E.D.2007). An abuse of discretion occurs when a trial court's ruling "is clearly against the logic of the circumstances be-

fore the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration." *Id.* We will reverse the trial court's decision only when we find a substantial or glaring injustice. *Id.*

## Analysis

▉ Husband filed his Motion for a New Trial on September 19, 2008, asserting a number of errors with the trial court's Judgment. On October 14, 2008, both parties argued the motion and the court took the motion under advisement. The trial court denied Husband's motion on October 29, 2008, concluding that "the evidence cited by [Husband's] counsel (who was not trial counsel) was not presented to the Court at trial in many instances and therefore the motion for new trial is denied."

Husband argues that the trial court's ruling is in error because Wife's deposition was properly before the trial court as an exhibit. Husband's argument is flawed in several respects. First, contrary to Husband's assertion, Wife's deposition was not admitted in its entirety at trial. While the parties discussed the deposition during Wife's testimony, the deposition was not admitted at that time. During Husband's testimony, his attorney attempted to enter Wife's entire deposition into evidence. Wife's counsel objected and the trial court ruled, "If you want to make a specific offer of a portion of the deposition, I'll consider that. . . . I'm not going to take the whole thing." Husband's counsel then offered a portion of the deposition into evidence, regarding Wife's order of protection and Husband's abuse. The trial court admitted that evidence as Exhibit K. The remainder of the deposition was not admitted at trial. Husband's reliance on Wife's deposition testimony regarding the Marital Residence as support for the motion for new trial fails as that evidence was never properly before the trial court. The trial court did not abuse its discretion when concluding that "evidence cited . . . was not presented to the Court at trial."

Moreover, Husband fails to recognize that the trial court's order denying the motion for new trial is not limited to Wife's deposition. The record before us shows that Husband cited evidence, in addition to Wife's deposition, as support for his motion for new trial. Therefore, regardless of whether Wife's deposition was properly before the trial court, the trial court did not abuse its discretion in denying Husband's motion. Such other evidence was clearly not presented to the trial court, and logically could form a basis for the court's denial of Husband's Motion for a New Trial. It is within the court's discretion to find that this additional evidence formed a basis for denying Husband's motion.

First, in his Motion for a New Trial, Husband refers to the deed to the Marital Residence and a record search conducted on the deed. Husband specifically states, "[Wife] claimed her name was added to the title of this piece of property. Yet a search of the records of the Recorder of Deeds for said property reveals that last transfer is quitclaim deed from Karen Workman to [Husband]. [Wife's] name has never been added to the title to this property." Importantly, Husband admits the Deed to the Marital Residence was not presented at trial. Furthermore, not only was the record search to which Husband refers not presented as evidence to the trial court, but the record search was not even performed until after the trial had concluded.

Second, Husband references the lack of overtime hours at his job since the conclusion of the trial. Husband noted in his motion that "[w]ith the continuing drop in

sales by GM it is unlikely that [Husband] will ever receive the same level of overtime as was the case when GM [was] making profits instead of losses. Moreover, since returning to work from the temporary lay-off, until that date of the trial and continuing, [Husband] has received almost no over-time." These additional alleged facts relating to Husband's employment situation were not presented as evidence during trial.

Finally, Husband's Motion for New Trial mentions his greater interest and ownership in the Marital Residence. Despite Husband's current posture with regard to the Marital Residence, Husband never presented evidence of this assertion at trial.

Husband's reliance on these examples of evidence, none of which were presented to the trial court, supports the trial court's denial of Husband's motion. While we disagree with Husband's assertion that Wife's deposition was properly before the trial court, even if it was, the trial court nevertheless had sufficient grounds to deny Husband's Motion for a New Trial. As such, we do not find the court abused its discretion in denying Husband's Motion for a New Trial. Husband's fourth point is denied.

*Conclusion*

The Judgment of the trial court is affirmed.

GEORGE W. DRAPER, III and ROY L. RICHTER, JJ., Concur.