

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| AYLICIA D. MICKOW, | ) | No. ED111927 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Franklin County |
| vs. | ) | 20AB-DR00256 |
| | ) | |
| CODY F. MICKOW, | ) | Honorable Joseph W. Purschke |
| | ) | |
| Respondent. | ) | Filed: December 24, 2024 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

## OPINION

Aylicia Mickow (Wife) appeals the trial court's May 2023 judgment dissolving her marriage to Cody Mickow (Husband) in which the court ordered joint legal and joint physical custody of their two minor children and then divided the parties' marital property. As specifically relevant to this appeal, the court valued at $270,000 the parties' property located at 670 Crestview Drive, where Husband resided, and valued at $80,000 their property located at 505 Blair Street, where Wife resided.[1] The court ordered Wife to convey to Husband via quit-claim deed her interest in the Crestview property and Husband to convey to Wife his interest in the Blair Street property.[2]

---

[1] Both properties are located in the city of Sullivan, Franklin County, Missouri.

[2] The court made other findings not relevant here, including regarding child support, health insurance, taxes, maintenance, attorneys' fees, and the division of other marital property.

On appeal, Wife first claims that in its child custody determination, the trial court erroneously failed to address all of section 452.375.2's[3] relevant, best-interest-of-the-child factors as required by section 452.375.6. Next, Wife claims the custody order is against the weight of the evidence. Lastly, Wife asserts the trial court's valuations of the parties' properties were inaccurate and unsubstantiated by the record.

We affirm because (1) the court's judgment addressed all the relevant, best-interest-of-the-child statutory factors, (2) the joint custody order is not against the weight of the evidence, and (3) the values the trial court assigned to the parties' two properties at issue are supported by the record and well within the court's broad discretion to divide marital assets.

## Background

Husband and Wife married on September 10, 2016, in Franklin County, Missouri. The parties have two minor children together, a daughter and a son. On June 17, 2020, Wife filed her petition for dissolution.[4] Trial began on September 12, 2022, and spread over two more days – November 28 and December 9.

*Testimony Relevant to Custody*

Wife testified that Husband was physically and verbally abusive and that his alcohol use fueled the abuse. Wife testified that when Husband drank alcohol, he became angry and destructive. She recalled an incident in which he held her by the throat pinning her against a wall. In another incident, Husband pinned her against a couch and punched her in the mouth busting her lip. But in interrogatory answers, Wife denied he abused her.

---

[3] All statutory references are to Revised Statutes of Missouri (2016) unless otherwise stated.
[4] Wife initially filed her dissolution petition in May 2019. When the parties briefly reconciled, Wife dismissed that action. Wife's initial filing is not relevant here.

After Wife moved out of their Crestview home in 2020, she agreed to Husband having visitation with the children on Wednesdays and every other weekend. Wife found the arrangement satisfactory for her and the children. Wife resisted Husband's request for more time because he failed to adhere adequately to the children's extracurricular and summer school commitments and allowed them too much time in front of television, computer, and phone screens. Wife claimed their son had difficulty readjusting upon returning from Husband's custody and that Husband discouraged the children from speaking with Wife on the phone.

Wife conceded that Husband and the children love each other and that the communication between Wife and Husband was poor. However, she disagreed that an alternating-week schedule was in the best interests of the children because Husband provided them inadequate "structure." Specifically, Wife claimed the children often missed school when in Husband's custody and their son often missed his weekly speech therapy. Wife conceded, however, that at times she failed to inform Husband of certain school-related or medical appointments.

For his part, Husband denied ever hitting Wife and denied an alcohol abuse problem. For two months during the pendency of this case, Husband wore an alcohol detector that recorded no alcohol use. Husband claimed he did not imbibe in the children's presence and no longer drove after drinking alcohol. His last of three DWIs was ten years ago and a breathalyzer in his car prevented him from driving if intoxicated. Husband also testified that he never hit his children, spanked them, left them unsupervised, or put them in harm's way. He testified that he loves his children, and is involved in their school work, extracurricular activities, and any medical needs including their son's speech therapy.

The court also heard the testimony from several witnesses regarding their experiences with Husband and Wife and their opinions of them as parents including a former neighbor, Husband's brother, Wife's maternal aunt, and Wife's first child's paternal grandmother. Husband's brother and Wife's aunt both testified that they saw Wife physically abuse the parties' youngest child and that they believed Husband was a great father. The grandmother, for her part, testified that Wife was a great mother and that she witnessed marks on Wife on two occasions which she believed Husband caused. Finally, the neighbor testified that although he saw both parties drink, he never saw either "belligerently drunk." He described Husband as a good father whom the children loved. He stated that Husband was smart, fun, social, honest, generous, and "overall a good person."

Lastly, the guardian ad litem testified that he had "no doubt" that both parties love their children and want what is best for them. He opined they were both fit to ensure the children were physically safe. However, he believed both parties persistently communicated poorly, that both parties weaponized their situations against each other, and that both are "selfish." The GAL was skeptical that they would ever put aside their differences to co-parent peacefully and was concerned that their conduct negatively affected the children. Nevertheless, the GAL recommended joint legal custody and joint physical custody with an alternating-week schedule. He recommended the parties continue to communicate through the TalkingParents phone application in order to document any future issues between them.

*Testimony Relevant to Parties' Marital Real Estate*

Wife's expert, a licensed realtor, testified that she compiled a comparative market analysis on the Crestview property. Expert estimated the property's value at between $315,000.00 and $325,000.00. However, Expert did not conduct an in-person visit to the

4

property, and her analysis was not a formal appraisal. Expert admitted she was Wife's current boyfriend's sister, but denied any bias because providing a biased and incorrect opinion would jeopardize her real estate license.

In its judgment, the court was "not fully persuaded" by Expert's valuation testimony because she did not visit the property to inspect the interior and because of her potential bias. Moreover, the $215,000 value Wife gave the property in her property statement to the court, a value with which Husband agreed, undermined Expert's higher value. The court also rejected the $215,000 since the parties had bought the home for $225,000 in November 2019 and Expert acknowledged that property values had risen in the area. Instead, the court valued the Crestview property at $270,000.

As for the Blair Street property, Wife testified they purchased it for $40,000 in November 2019 after it appraised at $43,000. Wife testified that in September 2021, it appraised at $53,000 and the parties made significant improvements to the property including new carpet, hardwood floors, wall-paneling, drywall, and a remodeled bathroom. Wife claimed the house still needed improvements, but she wanted to keep it since the children considered it "home."

Husband testified they bought the Blair Street property as an investment and while they had made some of the planned improvements, others remained, but they had already bought most of the materials needed. He believed the property was underpriced when they bought it and he valued the property at $80,000 due to all the improvements including light fixtures, tile flooring, and a new roof. The court agreed with the $80,000 value, rejecting the appraisal in September 2021 of $53,000 since it omitted the improvements and the materials already purchased for more improvements.

*The Court's Judgment*

Based on the foregoing testimony, the court entered its judgment awarding joint legal and joint physical custody with the physical custody consisting of an alternating weekly schedule. As for the property distribution, the court awarded to Husband the Crestview Drive property which is valued at $270,000, and awarded to Wife the Blair Street property which it valued at $80,000. The court then divided the parties' remaining assets between them to reach an equitable distribution of approximately 50.2% to Wife and 49.8% to Husband. This appeal follows.

**Discussion**

Point I – Section 452.375.2's factors relevant to custody determination

Wife claims the trial court inadequately addressed section 452.375.2's factors. We disagree because the court's thorough judgment addressed all the *relevant* statutory factors.

*Standard of Review for Points I and II*

A trial court's custody determinations are afforded greater deference than other decisions. *Thorp v. Thorp*, 390 S.W.3d 871, 877 (Mo. App. E.D. 2013). This Court will affirm an award of child custody unless we are "firmly convinced" that the judgment was not in the best interests of the child. *S.C.J.M. v. B.J.N.S.*, 667 S.W.3d 673, 675 (Mo. App. E.D. 2023). We review a child custody determination according to the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), that is, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Thorp*, 390 S.W.3d at 876. We view the evidence and its reasonable inferences in the light most favorable to the judgment and we do not reweigh the evidence. *Id.* at

6

877. "Because the trial court has a superior opportunity to observe the sincerity and character of the witness, we defer to the court's credibility determinations." *S.C.J.M.*, 667 S.W.3d at 676.

When this Court reviews whether a custody determination is against the weight of the evidence, "we proceed under the presumption that the trial court reviewed all evidence and based its decision on the child's best interests." *Thorp*, 390 S.W.3d at 877. "If evidence does not 'clearly preponderate in favor of either parent, *we will reverse the trial court's award only when there has been an abuse of discretion*.'" *Id.* (quoting *Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo. App. E.D. 1993)).

*Analysis*

When, like here, the parties have not reached a custody agreement, the court must consider in its judgment the eight factors listed in section 452.375.2 by making written findings "detailing the specific *relevant* factors that made a particular arrangement in the best interests of the child." Section 452.375.6 (emphasis added). These best-interest-of-the-child factors include, but are not limited to (1) the parties' wishes and their proposed parenting plans, (2) the needs of the children for a continuing and meaningful relationship with each parent, (3) the interaction and interrelationship of the child with parents and siblings, (4) which parent is more likely to allow a meaningful relationship with the other parent, (5) the child's adjustment to his home, school, and community, (6) the mental and physical health of all parties, including any history of abuse, (7) the intention of either parent to relocate, and (8) the child's wishes, if reliable. Section 452.375.2. The judgment must also comply with section 452.375.4's public policy considerations -- (1) to foster a meaningful relationship between parents and children and (2) to encourage both parents' participation in the health, education, and welfare of their children.

7

"Missouri courts have repeatedly emphasized the importance of these written findings in a custody proceeding." *T.J.E. v. M.R.M.*, 592 S.W.3d 399, 404 (Mo. App. E.D. 2020) (internal quotations omitted). When a trial court's judgment is silent with respect to section 452.375.4's public policy considerations and the relevant factors listed in section 452.375.2(1)-(8), the judgment fails to comply with section 452.375.6 and the case must be reversed and remanded to the trial court to make such specific findings. *Id.* While the trial court need not discuss non-relevant factors, it must discuss those that are. *Merriweather v. Chacon*, 639 S.W.3d 494, 500 (Mo. App. E.D. 2021). The purpose of the strict statutory requirement is to ensure meaningful appellate review. *Hall v. Hall*, 336 S.W.3d 188, 193 (Mo. App. W.D. 2011).

Turning to the record, we note first that Wife conceded at oral argument that the court's judgment sufficiently addressed factors one and two and the public policy factors, and that factors seven and eight were not relevant. That leaves for our consideration factors three through six. We find that the court's judgment here sufficiently addressed these remaining statutory factors.

The third factor addresses the interaction and interrelationship of the parents, siblings, and any other person who may significantly affect the children's best interests. Here, the court noted that each party has another child from a prior relationship and that the mother of Husband's first child was willing to cooperate so that Husband could have custody of all three of his children at the same time so as to ensure the children receive consistent and meaningful time with their half-sibling.

The court addressed the fourth factor – which parent is more likely to allow the children frequent and meaningful contact with the other parent – when it noted Wife's attempts to restrict Husband's visitation, to withhold information from him about the children, and to not involve

8

him in decisions. Yet, the court concluded that in the absence of serious physical abuse or domestic violence, "co-parenting efforts are universally in the best interests of the children."

Next, the fifth factor – the children's adjustment to their home, school, and community. Since both parties live in Sullivan only five minutes from each other, this factor is largely irrelevant, especially since the parties had been satisfactorily exercising an alternating weekly custody schedule during the pendency of this case.

Lastly, as for the sixth factor – the mental and physical health of both parties including any history of abuse – the court addressed in detail Wife's allegations that Husband had an alcohol abuse problem, used marijuana, and had abused her, and Husband's allegation that Wife "excessively punished" their youngest child. As for the alcohol issue, the court acknowledged Husband's felony DWIs but found that Husband's alcohol use did not interfere with the well-being of the children. As for drug use, the court found inadequate support in the record that either parent used marijuana. Finally, the court also found not credible Wife's contradictory testimony that Husband physically abused her. Likewise, the court found the claim Wife excessively punished the youngest child concerned conduct "remote" in time and that Wife was a capable and stable mother.

Wife relies on *T.J.E.*, 592 S.W.3d at 405 for her argument that the court failed to provide sufficient findings. There, this Court reversed because the judgment was silent as to the public policy considerations and the best-interest-of-the-child factors which precluded meaningful appellate review. *Id.* Likewise, in *Hall*, 336 S.W.3d at 193, the court's written findings included the eight factors but only as a mere checklist without the detail the statute requires. The issues in *T.J.E.* and *Hall* are not present in the judgment here. Rather, this judgment provided meticulous findings with section 452.375.2's relevant factors. Thus, we deny Wife's first point.

9

## Point II – Against-the-Weight-of-the-Evidence Challenge

Next, Wife claims the trial court's custody determination was against the weight of the evidence. We reject Wife's claim because we defer to the trial court's credibility determinations and view all facts and any inferences therefrom favorably to the judgment. *S.C.J.M.*, 667 S.W.3d at 676.

The judgment shows the court carefully weighed the testimony of both parties. For example, the court addressed Wife's claims of Husband's alcohol abuse, drug use, and domestic abuse and found that these allegations were not credible. The court also found that Wife's claim that equal parenting time with Husband was not in the best interests of the children due to his lack of structure and his irresponsibility to the children's education was disputed by the record since the children had near perfect attendance and received good grades. Moreover, as to Husband's allegation that Wife abused or at least excessively punished their youngest child, the court stated that "the remoteness of the allegations and current accounts of Wife's parenting skills are such that the Court believes Wife is a very capable and stable Mother to these children."

Ultimately, the court held that both parents were loving, caring, and involved parents who wanted the best for their children and that equal physical custody was in their best interest. And we will not disturb that judgment because the trial court is in the best position to make credibility determinations, especially in custody determinations. *Thorp*, 390 S.W.3d at 877; *S.C.J.M.*, 667 S.W.3d at 676. Thus, we deny Wife's second point.

## Point III – Marital Property

Lastly, Wife asserts that the trial court's valuation of the parties' two real properties lacked evidentiary support in the record. We disagree.

10

*Standard of Review*

We review the court's division of marital property under *Murphy v. Carron*, 536 S.W.2d at 32, and we give the court considerable deference and discretion. *Workman v. Workman*, 293 S.W.3d 89, 95 (Mo. App. E.D. 2009). Moreover, "[a]ppellate courts will interfere only if the division of property is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Id.* The division need not be equal, just fair and equitable given the circumstances of the case. *Id.* at 96.

"Property valuation 'is a determination of fact by the trial court, to which we give great deference, [and n]o one formula or method of determining value is binding or conclusive.'" *Sparks v. Sparks*, 417 S.W.3d 269, 285 (Mo. App. W.D. 2013) (quoting *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo. App. W.D. 2000)). Although we give the court broad discretion to assign a property's value, the valuation must be supported by evidence at trial. *Id.* (quoting *Nelson v. Nelson*, 195 S.W.3d 502, 507 (Mo. App. W.D. 2006)).

*Analysis*

We find that the valuations the court placed on the Crestview Drive and Blair Street properties are supported by the evidence at trial. The $270,000 on the Crestview Drive property fits into the range established at trial of $215,000 - $325,000. The $80,000 on the Blair Street property matched Husband's valuation and garnered support from both parties' testimony regarding the substantial improvements made during the marriage.

"When the trial court's valuation of property is within the range of conflicting evidence of value offered at trial, the court acts within its discretion to resolve conflicts in evidence." *Sparks*, 417 S.W.3d at 286 (internal quotations omitted). Valuation evidence may come from an expert or from the parties themselves. *In re Marriage of Holden*, 81 S.W.3d 217, 223 (Mo. App.

11

S.D. 2002). Moreover, a trial court can accept the valuation opinion of one expert over another and is free to believe or disbelieve expert testimony in the form of appraisals. *Id.* at 224.

In *Holden*, the court found that the trial court did not abuse its discretion with respect to its valuation of the parties' timeshares because its valuation was supported by husband's credible testimony, even though there was other testimony in conflict. Similarly, in *Shelby v. Shelby*, 130 S.W.3d 674, 683 (Mo. App. S.D. 2004), the $187,500 value the court placed on the parties' household goods was not an abuse of discretion because it was supported by wife's valuation opinions in her property statement that was in evidence.

### A. Crestview Property - $270,000

The $270,000 the court valued the Crestview property is in the range between Expert's opinion between $315,000 and $325,000 and Husband's and Wife' $215,000 figure and thus is within its discretion. *Sparks*, 417 S.W.3d at 286. The court noted it "was not fully persuaded" by Expert's testimony because (1) she did not visit the property or inspect its interior; (2) she had a potential bias as Wife's boyfriend's sister; and (3) her testimony was inconsistent with the $215,000 at which both Husband and Wife valued the property. The court found the $215,000 and $315,000-$325,000 valuations to be "equally unrealistic" since the parties purchased the home for $225,000 in November 2019 and Expert credibly noted that property in that area had significantly increased in value.

### B. Blair Street Property - $80,000

The court valued the Blair Street property at $80,000. It noted that although Wife presented an appraisal which established a considerably lower value, the appraisal was not persuasive since it omitted improvements made to the property by the parties, such as fixtures, materials, and a new roof. Husband credibly testified the home was worth $80,000 due to these

improvements and we defer to the trial court's credibility determination.  *Holden*, 81 S.W.3d at 223; *Shelby*, 130 S.W.3d at 683.  Thus, we deny Point III.

## Conclusion

We affirm for the foregoing reasons.

_____
James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Cristian M. Stevens, J., concur.

13