In re The Marriage of Christi L. **ATCHLEY, Respondent,**

v.

**David M. ATCHLEY, Appellant.**

No. ED 94525.

Missouri Court of Appeals, Eastern District, Division Three.

March 8, 2011.

Kirk C. Stange, Irene Costas, Michael P. O'Shea, St. Louis, MO, for appellant.

James R. Stein, St. Peters, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The husband, David Atchley, appeals the dissolution judgment entered by the Circuit Court of St. Charles County, which *inter alia,* awarded $1,500 per month in modifiable maintenance to the wife, Christi Atchley, and awarded her sole legal custody and joint physical custody of the parties' two children.

We conclude that the trial court erred regarding the maintenance award. Thus, we reverse the maintenance award and remand so that the parties may present additional evidence, as necessary, and the trial court shall reconsider the award in view of purported income-producing property awarded the wife, daycare and other expenses for the children erroneously included in calculating the wife's expenses, the wife's expected insurance costs, and the wife's student-loan debt. Because reconsideration of the maintenance award could affect the child-support award, we also reverse the child-support award and remand for reconsideration. We affirm the trial court's judgment in all other respects.

*Factual and Procedural Background*

The parties married in 1995, and had two children, ages nine and three at the

time of trial. The parties separated in 2008, and the wife filed for dissolution when she discovered the husband engaged in an extramarital affair with her best friend. The trial court found that while the divorce was pending, the husband moved his girlfriend and her children into the parties' marital home. There he supported them with marital assets and without contribution of any employment income from the girlfriend. During this time, the girlfriend legally changed her surname to Atchley and had a baby with the husband. Also while the divorce was pending, the husband used marital assets for the benefit of himself and his girlfriend, including over $30,000 in retirement assets, depleted in direct violation of the trial court's order.

The trial court heard the case over the course of three days. At trial, the parties presented evidence of their income, employment, marital assets and debts, monthly expenses, and the children's emotional condition and efforts to adjust to their parents' separation and their father's new family.

The trial court dissolved the parties' marriage and the judgment clearly finds the husband guilty of misconduct. The court awarded sole legal custody of the two children to the wife, and awarded the parties' joint physical custody. The court ordered the husband to pay child support of $1,483 per month and maintenance of $1,500 per month. The court divided the parties' marital property and debts, and ordered, *inter alia*, the husband to pay 65% of the wife's student-loan debt, for which the husband testified that he co-signed. The husband now appeals the trial court's maintenance award and the child-custody determination.

## Discussion

■ We review the trial court's judgment in a dissolution action as we review any court-tried case. *Lee v. Lee*, 117 S.W.3d 693, 696 (Mo.App. E.D.2003). We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Lee*, 117 S.W.3d at 696. Furthermore, we view all evidence and the inferences therefrom in the light most favorable to the trial court's judgment, and disregard all contrary evidence and inferences. *Id.*

In his first point, the husband claims the trial court erred and abused its discretion in ordering him to pay the wife $1,500 per month in maintenance. In three overlapping subpoints, he contends that the wife did not meet the threshold requirement for maintenance set forth in section 452.335.1 RSMo. (2000); that the court failed to consider income-producing property awarded the wife; and that the trial court failed to impute income from full-time employment to the wife and improperly calculated her reasonable expenses.

■ Trial courts have broad discretion in determining the amount of maintenance, and we will not interfere, absent an abuse of discretion. *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001); *Fischer v. Fischer*, 66 S.W.3d 43, 44 (Mo.App. E.D. 2001). The court may order maintenance for either spouse only if it finds that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs, and either that she is unable to support herself through appropriate employment or that she is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. Section 452.335.1.

■■ The husband complains that the trial court failed to consider income-pro-

ducing property that the wife received in the dissolution, which relates to the first part of the threshold test for maintenance. The purported income-producing property consists of retirement funds valued at approximately $47,000. When calculating maintenance, a trial court must consider income from retirement and IRA accounts awarded as marital property. *Hill*, 53 S.W.3d at 116. Failure to consider the recipient's reasonable expectation of income from investment of marital property constitutes error. *Fischer*, 66 S.W.3d at 44. Even though it must "consider" such income, the trial court is not required to impute income attributable to retirement funds awarded in a dissolution. *See Hill*, 53 S.W.3d at 116; *Lee*, 117 S.W.3d at 697. The trial court shall determine the amount of income, if any, imputed from such accounts based on the facts and circumstances of each case, including the cost to convert the account into cash, the parties' ages, the parties' intent as to investment, consumption, and retirement, the relative division of marital property and debts, and any equitable adjustment for reasonably certain taxes and penalties. *Hill*, 53 S.W.3d at 116. A party is not required to consume her share of marital property before receiving maintenance. *Id.*

In this case, the parties presented no evidence of any income generated by the retirement funds, the cost to convert the funds to cash, the effect of taxes and penalties from converting the funds to cash or from making periodic withdrawals, or any of the other factors identified in *Hill.* Nothing in the judgment discloses what income from the retirement funds awarded the wife the trial court may have considered in calculating the maintenance award,

beyond its finding that the wife did not receive any "substantial" income-producing property.[1] Because we must reverse the maintenance award for other reasons, the parties may present additional evidence and the court shall further consider the issue pursuant to Hill.

■ The husband also complains that the trial court failed to impute income from full-time employment to the wife, which relates to the second part of the threshold test for a maintenance award under section 452.335.1. The wife presented evidence that she earned $3,227 per month working 32 hours each week as a special procedures technologist in the angiography department at Saint Louis University Hospital. The husband argues that the wife is capable of working forty hours per week, thus able to earn a gross income of $3,667 per month. The trial court found that the wife did not earn sufficient income to provide for her reasonable needs. The court also found that as a 34–year–old single mother who already had outstanding educational debt, the wife could not devote the time and resources necessary to acquire additional training to achieve greater income potential. The wife testified that she wanted to work 32 hours per week instead of forty so that she could spend more time with the children and reduce their time in daycare each week. She also testified to the increased expenses she would incur should the children spend an additional day each week in daycare.

One of the criteria for qualifying for maintenance is the maintenance seeker's custody of a child whose condition or cir-

1. The trial court awarded the majority of the husband's retirement funds to the wife because the husband had already taken what the court perceived to be his share from his 401(k) in violation of the trial court's earlier order. The record also reveals that the trial court recognized that the 401(k) could significantly decline in value, leaving the wife with very little after the husband had depleted the fund.

cumstances make it appropriate that the custodian not be required to seek employment outside the home. Section 452.335.1. Here, the wife is the custodian of a child with special circumstances, although she still works 32 hours per week outside the home. The parties' nine-year-old has experienced ongoing and significant emotional trauma and difficulty adjusting to his parents' separation and his father's creation of a new family in the marital home. The child not only required counseling, but also exhibited symptoms of clinical depression, suffers bedwetting and daytime wetting accidents, has trouble sleeping, frequently cries and yells, suffers from significant anxiety, and hits himself on the head when upset. The older child's pediatrician and counselor recommended antidepressants. The younger child engaged in play therapy, and was also beginning to experience difficulty eating and sleeping, and to hit himself on the head. Consequently, the trial court could reasonably decline to impute income to the wife for an additional eight hours of work each week, given the children's circumstances.

█ The husband next argues that the trial court improperly calculated the wife's reasonable expenses. He disputes the trial court's consideration of daycare and other expenses for the children, student-loan payments, expected expenses for health and renter's insurance, and cellular-telephone service in calculating the wife's reasonable monthly expenses.

The husband argues that the trial court improperly counted the wife's monthly daycare expenses twice—once on the Form 14 for calculating child support and again in calculating the wife's monthly expenses for maintenance purposes. He argues that the trial court similarly erred in calculating additional living expenses for the children when those expenses are taken into account by the Form 14. The wife

concedes trial-court errors in this regard. Missouri follows the general rule that awards of spousal maintenance and child support are two distinctly separate concepts, and that maintenance does not include child support. *Nichols v. Nichols,* 14 S.W.3d 630, 637 (Mo.App. E.D.2000). Maintenance payments are limited to the needs of the recipient. *Id.* Furthermore, section 452.335 does not provide that amounts spent for the direct care and support of a child who lives with the spouse seeking maintenance may be included in determining the need for maintenance. *Id.* We reverse and remand the maintenance award for the trial court's reconsideration, consistent with this opinion.

Finally, the husband complains about the wife's expenses for health and renter's insurance, student loans, and cellular-telephone service. The wife testified that she could not afford either health insurance or renter's insurance, and the parties dispute whether the record contains sufficient evidence of those costs. Having health and renter's insurance is reasonable, but the wife had not obtained any actual quotes for either type of coverage. The wife's estimates of insurance costs were too speculative to constitute substantial evidence for calculating her reasonable monthly expenses. Because we are reversing the maintenance award and remanding the cause, the parties may present additional evidence on these issues, and the trial court shall reconsider this portion of the wife's reasonable monthly expenses.

The wife testified that she had outstanding student-loan debt totaling $31,777 incurred during the marriage, and that her monthly payments on the loans totaled $359.67. The husband testified that he cosigned for the loans. The trial court ordered the husband to pay approximately 65% of the wife's student loans, but the judgment is silent as to how the husband is

to pay, whether by a lump-sum principal payment or by contributions to the monthly payments. The husband complains that while the trial court ordered him to pay 65% of the wife's outstanding student-loan debt, the trial court simultaneously included the full monthly payments on the loans in determining that the wife could not meet her monthly expenses. Given the lack of specificity in the judgment and the lack of evidence in the record about the impact of a 65% principal payment on either the loans' term or monthly payment, we decline to address this complaint. The parties may present additional evidence on remand, and the court shall give the matter further consideration.

█ The husband also complains about the wife's $180 monthly expense for cellular-telephone service for herself and the parties' older child. He argues that he "should not be required to pay for [the wife]'s unreasonable luxuries such as unlimited texting and unlimited minutes," and that at least half of the phone expense should be eliminated. The wife testified that she has no landline telephone. The husband testified that he spends $147 on his own cellular telephone service with unlimited calling and texting, and that he used the child's cell phone to talk to the child. This expense is supported by substantial evidence, and we further find no abuse of discretion in the trial court's inclusion of this expense. We grant Point I in part and deny it in part.

In his second point, the husband claims that the maintenance award is excessive, and that, when combined with his child-support obligation, leaves him with insufficient income to meet his own reasonable needs. We decline to reach this claim of error, given our disposition of Point I. We deny Point II as moot.

█ In his final point, the husband claims that:

The trial court abused its discretion and committed reversible error by impermissibly inquiring into [the husband's] religious beliefs and practices, and as a result, rejected the proposed parenting plan of the [g]uardian ad litem, and further used the best interests of the child analysis as a mere pretext to adopt the parenting plan of the [wife], whose religious beliefs were more agreeable to the court.

The trial court addressed the following inquiry to the husband.

Q. Now, you said you attend a Morning Star Church?

A. Correct.

Q. Do you donate money to the church?

A. I don't donate money to the church.

Q. Do you—does [husband's girlfriend]?

A. No, she has not yet.

Q. Okay. Do either of you serve in any ministry that the Morning Star Church is involved in, whether some sort of charity work or teaching kids or anything like that?

A. No, not at this time.

Q. Do you have prayer in your home?

A. We pray at the dinner table.

Q. Bible study?

A. Not in the home, no.

Q. You've described yourself as a secular humanist, right?

A. Correct.

Q. Okay. How does—how does a secular humanist determine what's right and wrong?

A. I mean, it's a—it's a—that's a very deep question. I mean, I think people innately have an idea about what's right, what's wrong and you have to—you have to look at it from

the perspective of not just, you know, what's good for me, but what's good for those around me, am I doing a greater good. I mean, I can have morals and make correct decisions without having a religion per se.

Q. What's the authority though that you submit to?

A. Just my basic philosophy in life which is that I think humans can help each other solve their own problems. I don't think we need to look elsewhere. I think if we work hard at it, then we can make a better society and we can all get along and we can solve problems and we can improve how it is we live, what the human condition is.

Q. But ultimately what you're telling me is that the authority for what you think is right and wrong comes from you?

A. Yeah, I mean, it's—it has to come from me. I mean, you have to think—but you have to be—you have to try to be, you know, objective about it. Yeah, I don't have a book or a sheet of paper with a list of tenets or anything I should follow.

▆▆▆ In a custody dispute between parents of different and conflicting religious persuasions, the trial court cannot, under the system of law that it is appointed to administer, look at the parents' religious beliefs and choose one over the other. *Waites v. Waites*, 567 S.W.2d 326, 332 (Mo. banc 1978).

We reiterate our determination that the Missouri Constitution contemplates a strict and pervasive severance between religion and the state. Any suggestion that a state judicial officer were favoring or tending to favor one religious persuasion over another in a child[-]custody dispute would be intolerable to our organic law. Judges should not even give the appearance of such preference or favor.

*Id.* at 333. The *Waites* Court held that "no judicial officer may determine child custody based on approval or disapproval of the beliefs, doctrine, or tenets of the religion of either parent or their interpretation thereof." *Id.* The Court explained that "[i]nquiry into religious beliefs per se is impermissible; inquiry into matters of child development as impinged upon by religious convictions is permissible ...." *Id.*

▆▆▆ We agree that the trial court erred in conducting portions of its inquiry. While we caution the trial court to be mindful of the caselaw and to "not even give the appearance of such [religious] preference or favor," we do not agree with the husband's assertion that it affected the court's child-custody determination. To obtain relief on appeal, a party must demonstrate not only error, but also prejudice. *LaRocca v. LaRocca*, 135 S.W.3d 522, 524 (Mo.App. E.D.2004). We shall not disturb a trial court's judgment in a dissolution action where there is no showing of prejudice as a result of that judgment. *Id.* at 524–25. The trial court heard substantial evidence of the children's continuing difficulty adjusting to their new situation, particularly the significant problems encountered by the older child. The judgment reflects that the trial court considered the parenting plan submitted by each party and the guardian ad litem, and the trial court articulated a reasonable basis for adopting the wife's plan while modifying it to give the parties joint physical custody.

The primary difference we discern between the guardian ad litem's plan and the wife's is that the wife's plan does not provide for overnight custody for the husband on school nights (i.e., every Wednesday

and alternate Sundays) and does not have the children alternating households every week throughout the summer. The record includes substantial evidence of the children's ongoing emotional trauma and adjustment difficulties; evidence that the children do not regularly complete their homework, bathe, or eat breakfast when they spend the night with their father; evidence that the husband slaps the older child on the head; evidence that the older child is experiencing significant sleep problems; and evidence that the younger child was also developing sleep and eating problems at the time of trial. Therefore, we conclude that the trial court properly considered and relied on the children's best interest in awarding custody, despite its inquiry into the husband's religious beliefs. We deny Point III.

### Conclusion

We reverse the maintenance award and remand to the trial court so that the parties may present additional evidence concerning income produced by the retirement funds awarded the wife, the cost of health and renter's insurance, and payment of the wife's student loans. The court shall reconsider the wife's monthly income and expenses and the amount of the maintenance award accordingly, without including expenses for the children. Because reconsideration of the maintenance award could affect the child-support award, we also reverse the child-support award and remand for reconsideration. We affirm the trial court's judgment in all other respects.

SHERRI B. SULLIVAN, P.J. and CLIFFORD H. AHRENS, J., concur.