**Heidi Catherine WOOD, Respondent,**

v.

**Michael Stephen WOOD, Appellant.**

**No. ED 96218.**

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 29, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 2012.

Application for Transfer Denied April 3, 2012.

James C. Ochs, Stephen P. Dowil, Clayton, MO, for appellant.

Lynn Ricci, St. Louis, MO, St. Louis, MO, for respondent.

KENNETH M. ROMINES, J.

### Facts and Procedural History

Heidi Wood ("Wife") filed a petition for dissolution of marriage from Stephen Wood ("Husband") on 6 February 2009. The Commissioner heard the matter on 4–6 May 2010, and issued initial findings of facts and conclusions of law on 14 October 2010. Following motions to amend and motions for rehearing, the Commissioner entered amended findings of facts and conclusions of law on 26 December 2010. The circuit court accepted the Commissioner's findings and entered final judgment on 6 January 2011. Husband now seeks relief from this judgment. To avoid repetition, additional facts will be provided in the discussion section as needed.

## Standard of Review

The standard of review in divorce proceedings is the same as in any other court-tried case. *Foraker v. Foraker*, 133 S.W.3d 84, 92 (Mo.App. W.D.2004). The trial court's judgment should be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Discussion

Husband submits six points on appeal:

(1) Whether the trial court erred in valuing Husband's thirty percent ownership of Stephens Flooring by relying on Wife's expert's calculation rather than Husband's expert's calculation;

(2) Whether the trial court erred in declaring the promissory note obligation to Tom Wood as marital debt, and in assigning it solely to Husband;

(3) Whether the trial court erred in its property valuation of the Northwestern Mutual Life Insurance policy at $64,400 and in classifying this policy as marital property awarded to Husband;

(4) Whether the trial court erred in determining the appropriate amount of maintenance awarded to Wife;

(5) Whether the trial court erred in awarding attorney's fees to Wife in the amount of $50,000;

(6) Whether the trial court erred in its property division of Husband's 401K because the court's language is vague and ambiguous and could be interpreted that Husband would be responsible for penalties and taxes for the 401K liquidation both now and when distributions are made at retirement age.

Initially, we note that at oral argument Husband withdrew his claim of error with respect to the 401K. We are thus left with five points on appeal.

## I.

Husband first argues that the trial court erred in valuing Husband's thirty percent ownership interest in Stephen's Flooring when it relied on Wife's expert's (Ken Diel) [1] calculation rather than Husband's expert's (John A. Reed) [2] opinion. The trial court's reliance on Diel's calculation in valuing Husband interest in Stephen's Flooring was a misapplication of the law, and we remand for a proper valuation of Husband's shares as of the date of the divorce.

Husband is an employee and part owner of Stephen's Flooring Company ("Stephens"), a closely held corporation. While valuation of the stock of a closely held corporation can be a difficult matter,[3] in a dissolution proceeding, the object of a business valuation is to determine fair market value for the purpose of application of the equitable distribution rules to arrive at a fair property division. *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo.App. W.D.2000). "The very attributes that simplify valuation of a publicly held stock, a ready market and historical sales record, are absent with a closely held corporation." *Id.* (cit-

---

1. Diel has the following qualifications: BS in Accounting; CPA for thirty-eight years; Personal Financial Specialist since 2001; Certified Valuation Analyst since 1997; and Mortgage Broker.

2. Reed has the following qualifications: BS in Business Administration; MBA; and certified as Accredited Senior Appraiser in 2003. He testified that he has been conducting valuations since 1998, and he is a senior manager in a business consulting group.

3. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 826 (Mo. banc 1984).

ing F. HODGE O'NEAL & ROBERT B. THOMP-SON, CLOSE CORPORATIONS & LLCS: LAW & PRACTICE § 1.02 (3rd ed.2000)). "There are a number of various valuation methodologies which fall within one of the following broad categories: (1) earning approach; (2) liquidation ("underlying asset") approach; and (3) comparable sale approach." *Id.* (citing O'Neal, *supra,* at § 7.26).

At trial, both Husband and Wife presented testimony from different experts as to the value of Husband's interest in Stephen's. Wife's expert, Ken Diel, performed a calculation using a formula provided in a Buy–Sell Agreement that Husband and the other two shareholders of Stephen's entered into in 2007 when they all purchased the company. Diel specifically testified that he was merely retained to compute this formula and *not* to provide an opinion as to fair market value at the time of the dissolution:

> Defense Counsel: Were you engaged to provide an opinion as to fair market value or fair value of Stephen's Flooring?
>
> Mr. Diel: No ... I was asked to consult on the agreement here and determine—looking at the documents to determine how to calculate the value of this company. I read the buy-sell agreement and felt that it showed calculation of this, and there was not reason to do a valuation in any format.

The specific formula in the Buy–Sell on which Diel relied provides that the total shares' value equals the *last appraised value* of the company, plus or minus earnings or losses, less "dividends" paid or declared by the Board. Using this approach, Diel calculated the total value of Stephen's Flooring to be $3,542,296, with Husband's thirty percent share at $1,062,688.

Husband's expert, John A. Reed, conducted an actual assessment of Stephen's Flooring, and provided an opinion as to the fair market value (FMV) of Husband's thirty percent interest. Reed relied on traditional measures of valuing closely-held corporations—accounting for goodwill, minority ownership, the current recession, and other measures—and calculated the FMV of Husband's thirty percent interest at $325,000.

■ The trial court found Diel's testimony more persuasive and credible than Reed's testimony and relied on the Buy–Sell computation in determining the value of Husband's share of Stephen's. While value can be a determination of fact by the trial court to which we give great deference, and no one formula or method of determining value is binding or conclusive,[4] the rule is that the date of valuation of marital property is the date of trial.[5]

Diel's calculation failed to comply with the above stated rule because the Buy–Sell formula, as interpreted by Diel, does not seek a fair value or fair market value of Stephen's Flooring or Husband's shares. *Thill v. Thill,* 26 S.W.3d 199, 203 (Mo.App. W.D.2000). Diel readily admitted this fact. Furthermore, the formula does not even employ a current appraisal of Stephen's Flooring as part of the calculation of present share value, and instead uses the historical value of company in 2007 at $3,000,000 as the starting point. Clearly then, Diel's testimony does not value the property as of the date of the divorce.

---

4. *In re Marriage of K.B.,* 648 S.W.2d 201, 206 (Mo.App. S.D.1983); *Miranda v. Miranda,* 596 S.W.2d 61, 65 (Mo.App. W.D.1980)

5. *Taylor v. Taylor,* 736 S.W.2d 388, 391 (Mo. banc 1987).

■ Generally, the trial court can accept the opinion of one expert as to value over another and can prefer one method of valuation over competing methods based on the particular facts of the case and the circumstances of the corporate entity involved. *Flarsheim v. Twenty Five Thirty Two Broadway Corp.*, 432 S.W.2d 245, 255 (Mo. banc 1968). But, where an expert's testimony does not attempt to determine FMV, the trial court simply cannot find it more persuasive and credible than another and rely on such testimony in valuing those shares. The reliance by the trial court of Diel's testimony was a misapplication of the law. Therefore, we reverse and remand for a proper determination of the value of Stephen's Flooring as of the date of the divorce.

Inasmuch as we remand on the issue as to fair market value, we likewise reverse and remand as to the other four issues set out by Husband as these issues will be impacted by a correct valuation of Stephen's Flooring stock values.

The judgment is reversed and remanded.

KATHIANNE KNAUP CRANE, P.J., concurs.

LAWRENCE E. MOONEY, J., dissents in separate opinion.

LAWRENCE E. MOONEY, Judge, dissenting

I respectfully dissent, both from the majority's consideration of the husband's first point on appeal, and from the majority's failure to consider the remaining points on appeal, which were fully briefed and argued by the parties.

The husband's first point on appeal does not preserve the asserted challenge to valuation. Further, even if it did, the husband has failed to file the trial exhibits upon which the trial court relied in its valuation. Finally, even if the matter were properly preserved and presented, I would affirm the trial court's valuation.

The husband's first point relied on protests as follows:

The court erred in its property valuation of husband's 30% ownership of Stephens Flooring because it relied on [the wife's expert] Ken Diel's calculation over [the husband's expert] John Reed's opinion, in that Ken Diel's testimony should have been stricken as it was irrelevant and inadmissable [sic] and not an opinion of fair market value but instead was a legal conclusion and was unpersuasive while John Reed's opinion was more persuasive and was grounded on sound accounting principles.

Is this a complaint that no substantial evidence supports the valuation? Is it a challenge that the wife's expert evidence should not have been admitted? Is it an assertion that the trial judge believed the wrong expert? It appears to be all three. But a point on appeal that raises three claims of error preserves none. *In re Marriage of Fritz*, 243 S.W.3d 484, 487 (Mo.App. E.D.2007). This point on appeal not only lacks the wherein and why; it lacks the what. I do not understand what ruling of the trial court is claimed as error. The majority complains of the purported staleness of the valuation. This issue, however, is neither asserted in the point relied on, nor briefed. Allegations of error not briefed shall not be considered in any civil appeal. Rule 84.13(a). The majority appears to settle on the trial court's reliance on the wife's expert Ken Diel's valuation as a misapplication of the law. But the fault they find is not with the court's extensive findings of fact and conclusions of law. Rather the majority cites to a single question to and answer by a witness. This does nothing to demonstrate a misapplication of law by the court. The

first point relied on preserves nothing for review. Rule 84.04.

The husband has also failed to file with this Court the trial exhibits. The record on appeal shall contain all of the record, proceedings, and evidence necessary to the determination of all questions presented to the appellate Court for decision. Rule 81.12(a); *Bridgeman v. Bridgeman*, 63 S.W.3d 686, 692 (Mo.App. E.D.2002). Specifically, Rule 81.12(e) provides that the appellant is responsible for depositing all exhibits necessary for the determination of any point relied on. The trial court specifically considered and credited the trial exhibits that the husband has failed to file. I have no idea what evidence is contained in the exhibits that the husband has failed to file in this Court. Thus, I cannot conclude that the trial court's factual finding of valuation lacked evidentiary support. I am unwilling to convict the trial court of error when I have not seen and considered the evidence that the trial court had before it.

The trial court expressly relied on the buy-sell agreement, the business valuation prepared by the husband's expert, John Reed, and the business valuation prepared by the wife's expert, Ken Diel—Exhibits A and 18, Z and 19, and 25, respectively—to determine that Diel's analysis was more persuasive and credible than Reed's and that the buy-sell agreement provided the proper valuation method for determining the value of Stephens and the husband's interest in the company. The husband cites numerous trial exhibits in his brief as support for his argument, yet, again, he has provided none of these exhibits on appeal. The husband's failure to provide any exhibits, particularly Exhibits A or 18, Z or 19, and 25, renders his claim unreviewable. *See id.* (wife's failure to file Exhibit B precludes review of her claim that trial court erred in failing to award maintenance).

Even if the husband had preserved the valuation question by a proper point on appeal and by depositing the trial exhibits, the trial court has broad discretion in valuing marital property. *L.R.M. v. R.K.M.*, 46 S.W.3d 24, 27 (Mo.App. E.D.2001). The trial court abuses its discretion only where its ruling is clearly against the logic of the circumstances then before it, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *D.K.H. v. L.R.G.*, 102 S.W.3d 93, 96 (Mo.App. W.D.2003). Where the court is confronted with conflicting valuation evidence, the reviewing Court defers to the trial court's resolution of the conflict. *Id.* When the trial court's property valuation is within the range of conflicting valuation evidence offered at trial, the court acts within its discretion to resolve conflicts in the evidence. *Id.* at 97.

Stephens is a closely held corporation. The stock is owned by three shareholders who are active in the company's top management, and the shares are not publicly traded. The most recent sale of shares occurred three years prior to trial when the husband and two colleagues bought the company from the husband's brother, and the shareholders negotiated the buy-sell agreement and the valuation formula it contained at that time.

> Probably the most difficult asset for a trial court to value is a closely held corporation. This is because the closely held corporation, by definition, has no trading market for its stock, since sales rarely occur at regular intervals. In addition, even if they are sold, the price paid would seldom reflect the requisite elements found in a representative transaction as expressed in the phrase "fair market value."

21 Jack Cochran & Nancy A. Garris, Missouri Practice, Family Law sec. 8:4 (3d ed.).

"Value is a determination of fact by the trial court, to which we give great deference." *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo.App. W.D.2000). No single formula or method of determining value is binding or conclusive. *Id.* "The judicial determination of value must be an informed judgment, but fair 'value' is not susceptible of determination by any precise mathematical computation." *Id.* (quoting *Flarsheim v. Twenty Five Thirty Two Broadway Corp.*, 432 S.W.2d 245, 255 (Mo.1968)). Generally, therefore, the trial court can accept the opinion of one expert as to value over the opinion of another, and the court can prefer one method of valuation over competing methods based on the particular facts of the case and the circumstances of the corporate entity involved. *Id.*

The formula set forth in a buy-sell agreement is one of the five major methods our Supreme Court outlined in *Hanson v. Hanson* for valuing professional goodwill. 738 S.W.2d 429, 435–36 (Mo. banc 1987) (citing *In re the Marriage of Hall*, 103 Wash.2d 236, 692 P.2d 175, 179–80 (1984)). In the context of valuing goodwill in a professional partnership, our Supreme Court has stated that the buy-sell agreement method for determining value may be appropriate under certain circumstances, and that the trial court is best suited to determine when a buy-sell agreement constitutes competent evidence. *Id.* at 436. The same is equally true in the context of a closely held corporation, that like professional goodwill, is extremely difficult to value.

The valuation formula set forth in the buy-sell agreement, and Diel's opinion based on that formula, constituted competent evidence and were admissible. Using the formula set forth in the buy-sell agreement, Diel, a certified public accountant, valued the business as a whole at $3,542,296, and the husband's thirty-per-cent interest at $1,062,688.80. Reed, who is not a certified public accountant, was not asked to value the business as a whole, but only to determine the fair market value of the husband's interest. He determined the fair market value of the husband's thirty-percent interest at $325,000. Yet Reed conceded that the value of the company's assets less its liabilities equaled $2.2 million. Diel pointed out that the value of the company cannot be worth less than the net value of its assets, and that the $2.2 million in company net assets could not simply be ignored.

I reiterate that where the trial court is confronted with conflicting valuation evidence, this Court defers to the trial court's resolution of the conflict. *D.K.H.*, 102 S.W.3d at 96. Here, the trial court's determination was within the range of conflicting evidence of value offered at trial, *id.* at 97, and the trial court is entitled to accept the opinion of one expert as to value over the opinion of another, *Thill*, 26 S.W.3d at 203. Thus, the trial court was entitled to rely on Diel's opinion based on the formula contained in the buy-sell agreement in determining the value of the husband's interest in Stephens. I would deny the husband's first point.

As the majority notes, the husband withdrew his final point, concerning distribution of his 401(k), at oral argument. As to the remaining four points, however, I do not agree that a redetermination of the value of Stephens as of the date of dissolution will affect all these points. In any case, I believe that this Court should consider the remaining points the husband raises on appeal, which were briefed and argued by the parties.

In his second point, the husband claims the trial court erred in its assignment of the debt owed for the purchase of the thirty-percent interest in Stephens. He contends that the court either should have

divided the debt equally between the parties, or should have deducted the debt from the husband's marital assets.

The trial court shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors. Section 452.330.1 RSMo. (2000). When reviewing a division of marital property, we give deference to the trial court, which is vested with considerable discretion. *Workman v. Workman,* 293 S.W.3d 89, 95 (Mo. App. E.D.2009). We will interfere only if the property division is so heavily and unduly weighted in favor of one party as to constitute an abuse of discretion. *Id.* A division of marital property need not be an equal division, but need only be fair and equitable given the circumstances of the case. *Id.* at 96.

I see no abuse of discretion. First, the husband testified that he "want[ed] to be responsible" for the debt owed on the Stephens stock purchase. Second, the trial court awarded to the husband the interest in Stephens, and assigned the debt for the purchase of that interest to him, as the husband requested. Furthermore, I do not understand the husband's contention that the court should have deducted the debt from the husband's marital assets. The trial court did, in fact, deduct this debt from the total marital property awarded the husband, and subtracted this debt to arrive at its net subtotal of marital property less debts. I would deny the husband's second point.

In his third point, the husband claims the trial court erred in its valuation and award of the Northwestern Mutual life insurance policy. He contends that this policy no longer exists, but was surrendered to fund the purchase of a MetLife insurance policy, for which the trial court accounted elsewhere in its property division.

The husband included the Northwestern policy on an application for a MetLife life insurance policy submitted on or about March 18, 2009 while this action was pending. He listed Stephens as the owner of the prospective MetLife policy. The husband and his insurance agent testified that the husband surrendered the Northwestern policy in order to fund a new MetLife policy. The husband testified that Stephens owns the MetLife policy. If I accept the husband's rendition of the facts, it appears that the husband unilaterally decided to use a $64,400 marital asset—the Northwestern policy—to fund the purchase of other property—the MetLife policy—which he then gave to Stephens, the owner of the MetLife policy. In short, the husband dissipated a marital asset by exchanging it for other property that he then gave to his company during the pendency of this action.

To obtain relief on appeal, a party must demonstrate prejudice, not merely trial-court error. *Atchley v. Atchley,* 334 S.W.3d 709, 716 (Mo.App. E.D.2011). Consequently, even if the trial court erred in characterizing the Northwestern policy as marital property and awarding it to the husband, I fail to see how the husband suffered prejudice by having an asset that he dissipated during the pendency of the dissolution allocated to him in the property division. The husband is not entitled to additional marital property to compensate for the marital property that he dissipated. I would deny the husband's third point.

In his fourth point, the husband claims the trial court erred in awarding the wife maintenance of $4,000 per month because the trial court incorrectly calculated the wife's hours of work, and thus her income, and improperly included in the husband's income distributions from Stephens. Trial courts have broad discretion in determining the amount of maintenance, and we

will not interfere, absent an abuse of discretion. *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001); *Atchley*, 334 S.W.3d at 712.

The husband complains that the trial court incorrectly found that the wife worked only fifteen hours per week. Indeed, the trial court observed that the wife worked an average of fifteen hours per week during the marriage. The court found, however, that the wife accepted more hours after the parties separated—working from twenty to 35 hours per week—but that additional hours were not always available with her employer because of the current economy. The trial court determined the wife's income based on an average of thirty hours per week at an hourly wage of $18.25, for a monthly income of approximately $2,400. The court ordered maintenance after determining that the wife suffered a shortfall between her income and reasonable expenses each month. I do not understand the husband's complaint that the court found the wife worked fifteen hours per week. The court did not calculate the wife's income based on that figure.

The husband also complains that the trial court included in the husband's income distributions from Stephens that he does not actually receive, but rather that the company uses to directly pay the note for the purchase of the husband's interest in Stephens. He challenges the trial court's inclusion of the distributions in his income when those distributions were not considered by the court in its valuation determination for Stephens.

The role of distributions in valuing the Stephens stock is not pertinent to the amount of maintenance the trial court ordered the husband to pay to the wife. What is pertinent is that substantial evidence supports the trial court's determination to include these distributions in the husband's income for purposes of calculating maintenance. At the time of trial, the husband owed $710,650 for the purchase of his thirty-percent interest in Stephens. The company, however, was directly paying this personal debt for the husband using his share of the company's distributions. While it is true that the husband does not receive company distributions in the form of cash to use as he pleases, he nonetheless receives a benefit from the company by having this substantial personal debt paid for him, in addition to the salary and commission income reflected on his annual W–2 form. The trial court properly considered the company's payment of the husband's debt as income when calculating maintenance.

Again, I note that the husband failed to file an updated income and expense statement at trial, and he failed to deposit with this Court the wife's updated income and expense statement, submitted at trial as Exhibit 3B. I find no abuse of discretion, and would deny the husband's fourth point.

In his fifth point, the husband claims the trial court erred in its award to the wife of $50,000 for attorney's fees. The trial court is an expert on the necessity, reasonableness, and value of an attorney's services, and we will reverse the trial court's ruling only where there is a clear abuse of discretion. *Cosby v. Cosby*, 291 S.W.3d 795, 799–800 (Mo.App. E.D.2009). One spouse's superior ability to pay will suffice to support an award of attorney's fees. *Id.* at 800.

At the conclusion of the trial, the court admitted the wife's Exhibit 26 summarizing her attorney's fees and costs incurred prior to the two-day trial. The husband requested itemized billing statements, but emphasized repeatedly that he did not desire testimony about the fees and costs. In his proposed findings of fact and conclusions of law contained in the legal file, the husband acknowledges that he received

the requested itemized billing statements. The husband has not deposited Exhibit 26 with this Court as required by Rule 81.12, thus precluding review of his claim of error. *See Bridgeman*, 63 S.W.3d at 692 (wife's failure to file Exhibit B precludes review of her claim that trial court erred in failing to award maintenance).

The trial court found that the husband has the income and resources to pay the wife's reasonable attorney's fees while the wife does not. Consequently, the trial court in its amended judgment ordered the husband to pay $50,000 toward the wife's reasonable attorney's fees and costs.[6] Given the disparity in the parties' income and economic circumstances, given the trial court's findings, and given the deficiencies in the record the husband submitted, I discern no abuse of discretion. I would deny the husband's fifth point.

I would affirm the trial court's judgment in its entirety.

---

**6.** The trial court's amended judgment also reduced the amount of the husband's equalization payment to the wife by $90,000—from $440,000 in the original judgment to $350,000 in the amended judgment.